OSTRANDER *v.* CITY OF LANSING.

111 693
s 115 224
111 693
d127 673
111 693
d135 ¹53
111 693
146 ²628
· 111 693
e156 ¹691

1. MUNICIPAL CORPORATIONS—CONSTRUCTION OF SEWERS—LIABILITY FOR NEGLIGENCE.

A city, in the construction of a public sewer, from which, under its charter, it may derive an income, is engaged in the prosecution of a private municipal enterprise, and is liable for its negligence in the manner of doing the work.

2. MASTER AND SERVANT — ASSUMPTION OF RISK — QUESTION FOR JURY.

Whether a workman employed in constructing a sewer should, in the exercise of due care, have known of the fact that the earth had been loosened three years before by reason of an excavation for a water main a few feet distant, thereby increasing the danger of a cave-in, and should therefore be held to have assumed the risk as incident to his employment, is a question for the jury.

3. TRIAL—POLLING OF JURY—COMPROMISE VERDICT.

If a juror, upon the jury's being polled, makes a response which implies that the verdict does not embody the result of his own investigation and best judgment, the verdict should not be received. So *held* where a juror, in answer to the question, "Is this your verdict," responded, "Compromise verdict."

Error to Ingham; Person, J. Submitted January 8, 1897. Decided March 10, 1897.

Case by George S. Ostrander against the city of Lansing for personal injuries. From a judgment for plaintiff, defendant brings error. Reversed.

*Clark C. Wood*, City Attorney (*Black & Dodge*, of counsel), for appellant.

*Cahill & Ostrander*, for appellee.

MONTGOMERY, J. The plaintiff recovered a judgment of $2,500 for injuries received while in the employ of

defendant in constructing a sewer in the year 1892. The injury occurred from the caving in of the earth on one side of the excavation, and there seems to be no dispute that this might have been avoided by properly shoring up the sides, which it was customary to do. But on this occasion there was not sufficient lumber there for the purpose, and but a single board was placed on either side of the excavation, about one foot below the surface, with a prop between. When the plaintiff had reached a depth of from five to six feet, as shown by his testimony, the earth slid in from near the bottom of the ditch, where he was at work, and buried him to his thighs. It was averred in the declaration that in 1889 the defendant had caused to be built and constructed, at a point some two or three feet south of the sewer, a ditch, in which were laid water mains, so called, which pipes were laid at a depth of five feet below the surface, by reason of which the earth around and about such water mains, having been once thrown out, and replaced afterwards, was, at the time of the injury to the plaintiff, in 1892, liable and likely to cave and fall into the said sewer ditch, rendering it dangerous and unsafe to dig near to and below said water pipe any ditch or opening in the earth. And the declaration avers that the duty of the city was, by employing sufficient lumber, boards, and pieces of timber, to have stayed and supported the walls, so that the earth could not cave and fall into the ditch. The effect of the charge of the circuit judge was that the plaintiff assumed the ordinary risk of working in a trench of the kind which this one appeared to him to be; that, if he knew of the existence of a water main in proximity to the trench, or if, in the exercise of ordinary care and prudence, he ought to have known of it, he could not recover. But the court left it for the jury to determine whether plaintiff did know or should have known of the proximity of this water main, and whether the defendant exercised ordinary prudence in guarding against the results of the proximity of the water main.

Three principal points are discussed in the brief of counsel for the defendant.   It is contended:

*First,* that the construction of the sewer was the exercise of a governmental function, and that the city is, therefore, not liable.

*Second,* that the plaintiff assumed the risk of the employment in any event.

*Third,* that the verdict given in the case is not a lawful verdict.

1.  We think the claim that the city was in the exercise of a governmental function, instead of a private municipal enterprise, is ruled by the case of *City of Detroit* v. *Corey,* 9 Mich. 165 (80 Am. Dec. 78).   The charter of the city of Lansing contains the following provision: "The council may charge and collect annually, from persons whose premises are connected by private drains with the public sewers, such reasonable sum, not exceeding two dollars per year, as they may deem just, in proportion to the amount of drainage through such private drain."   It was said of a similar power in *City of Detroit* v. *Corey:*

" It is to be observed that the power under which they acted, and which made that lawful which would otherwise have been unlawful, was not a power given to the city for governmental purposes, or a public municipal duty imposed on the city, as to keep its streets in repair, or the like, but a special legislative grant to the city for private purposes.   The sewers of the city, like its works for supplying the city with water, are the private property of the city.   They belong to the city.   The corporation and its corporators, the citizens, are alone interested in them. The outside public, or people of the State at large, have no interest in them, as they have in the streets of the city, which are public highways."

It may be added that, as to the sewers constructed under the charter by the city of Lansing, they may be also a source of revenue.   See, also, *Barron* v. *City of Detroit,* 94 Mich. 601 ( 34 Am. St. Rep. 366 ); *Baker* v. *City of Grand Rapids, ante,* 447.

2.  The question as to whether the plaintiff should be

held, as matter of law, to have assumed the risk as incident to his employment, is, under the circumstances of this case, not altogether free from difficulty. The plaintiff, having shown himself a person of at least average intelligence, must be held to have known that there was greater or less danger of the soil caving in, depending upon the nature of the soil; and this risk he assumed. But was he bound to know that peculiar conditions existed which rendered the soil at this place peculiarly liable to cave in? If he knew, or reasonably ought to have known, of the danger, he should be held to have assumed the risk. On the other hand, where there is any doubt whether the employé was acquainted, or ought to have been acquainted, with the risk, the determination of the question is necessarily for the jury. *Rummell* v. *Dilworth*, 111 Pa. St. 343. It cannot be said, in this case, that the proximity of the water mains did not add to the risk, nor does it appear that the plaintiff knew of this proximity; and we think, under the circumstances, that it was properly left to the jury to determine the two questions submitted to them, namely, whether the plaintiff knew, or ought to have known, of the existence of the water main; and, second, whether the city was negligent in failing to guard against the injury. A case somewhat analogous is that of *Breen* v. *Field*, 157 Mass. 277, in which case it appeared that the plaintiff was employed in digging a trench, the sides of which caved in upon him, by reason of failure to provide suitable means of support, and there was testimony tending to show that there had been a washout, a short time before, at the place where the caving in occurred, and that this caused the caving in, and that plaintiff was ignorant that a washout had occurred there. The court say:

" It cannot be said that he [plaintiff] assumed the risk, when he was ignorant of facts on which, perhaps, a proper appreciation of the risk depended. Whether he was or was not ignorant of them, or whether he could have failed, in the exercise of due care, to observe the

condition of the sides of the trench, were questions for the jury."

See, also, *Parkhurst* v. *Johnson,* 50 Mich. 70 (45 Am. Rep. 28); *Norfolk & Western R. Co.* v. *Ward,* 90 Va. 687 (44 Am. St. Rep. 945).

3. The record shows that, after the jury had been out all night, the following occurred:

"*Foreman:* I am instructed to inform the court that we have arrived at a compromise verdict, if the court will receive it. We could not arrive at a verdict in any other way. If the court will receive it, we will give it, and, if not, we will have to retire.   *   *   *

"*The Court:* Mr. Foreman, please state a little more fully what you mean by a compromise verdict.

"*Foreman:* The balance stood the same since we went out as it did a short time since. They agreed to do certain things, provided it could be given as a compromise verdict, and the court would accept it. I don't think there is any likelihood of our ever coming to any other verdict.

"*The Court:* I think I will take the verdict.

"*Clerk:* For whom do you find?

"*Foreman:* We find for the plaintiff.

"*Clerk:* How much?

"*Foreman:* One hundred dollars for medical services, and $2,400 damages.

"*The Court:* That makes $2,500."

The jury was then polled, and each juror, as his name was called, responded to the question, "Is this your verdict?" "Yes, sir," except Theodore Weston, who responded, "Compromise verdict." Just what was intended by this juror it is somewhat difficult to understand. It is said by plaintiff's counsel that it is a matter of common knowledge that verdicts are often the result of compromise. In a sense, this is true, and perhaps it is not to be condemned, if, after the members of the jury have canvassed their views, they are able to conscientiously yield their first impressions, and reach a result, the *responsibility* of which each is finally ready to assume. But it never ought to be permitted that any member of the panel should shift his responsibility by placing it

upon the ground that it is a compromise, and, in effect, implying that the result does not embody the results of his own investigation and best judgment. We think this verdict should not have been received. This case is very similar to that of *Rothbauer* v. *State*, 22 Wis. 468, in which a juror stated, in answer to the question as to whether he concurred in the verdict, that he had agreed to it for the sake of an agreement, and not because he thought it was correct.

Judgment reversed, and a new trial ordered.

LONG, C. J., GRANT and MOORE, JJ., concurred. HOOKER, J., concurred in the result.