HODGINS *v.* BAY CITY.[1]

1. MUNICIPAL CORPORATIONS—NEGLIGENCE—GOVERNMENTAL FUNC-
TIONS—MASTER AND SERVANT—NEGLECT OF CORPORATE AGENTS
—ELECTRICITY.

A city which furnishes electric light to patrons for commercial
purposes is not relieved from liability for the neglect of its
employés on the theory that the business relates to local gov-
ernmental functions, but is bound to exercise reasonable
care in insulating dangerous wires.

2. CONTRIBUTORY NEGLIGENCE—MUNICIPAL CORPORATIONS—RELI-
ANCE ON CARE EXERCISED.

A lineman of a telephone company whose poles are used by a
city for the purpose of stringing electric wires may rely on
the exercise of due care on the part of the city in properly
insulating and inspecting its wires, and is not guilty of con-
tributory negligence if his duties bring him in contact with
a wire which would not be dangerous if properly insulated.

3. NEGLIGENCE — ELECTRICITY — INSPECTION — CONSTRUCTIVE NO-
TICE.

A charge in an action for negligent death, that if the defective
insulation was caused by a change since the original con-
struction, defendant was not liable unless the condition ex-
isted for such a length of time that the defendant might, in
the exercise of reasonable diligence, by a proper inspection,
have discovered the defect and repaired it, sufficiently pro-
tects defendant's rights.

4. SAME— CONTRIBUTORY NEGLIGENCE— KNOWLEDGE OF DANGER.

It was proper to instruct the jury that, unless the danger aris-
ing from the defect was such that it would, in the exercise of
ordinary care, naturally attract the attention of the lineman,
he would not be charged with notice of it; and only with
notice of the danger incident to a similar wire properly in-
sulated; but that his degree of care must be commensurate
with his extensive experience, and if the conditions would
have naturally attracted his attention, in the exercise of due
care, and caused him to discover the danger, he was guilty
of negligence.

5. WEIGHT OF EVIDENCE—MOTION FOR NEW TRIAL.

A verdict for the plaintiff was supported by the evidence.

[1] Rehearing denied July 15, 1909.

Error to Genesee; Wisner, J.  Submitted February 25, 1909.  (Docket No. 142.)  Decided May 26, 1909.

Case by Margaret Hodgins, administratrix of the estate of James H. Hodgins, deceased, against the city of Bay City for the negligent killing of plaintiff's intestate. There was judgment for plaintiff, and defendant brings error.  Affirmed.

*S. G. Houghton*, for appellant.

*Pierce & Kinnane* (*De Vere Hall*, of counsel), for appellee.

BLAIR, C. J.  James H. Hodgins, the plaintiff's husband, lost his life on the 14th of September, 1906, through a shock received from an electric wire erected, owned, and maintained by defendant.  Deceased, at the time of his injury, was in the performance of his duty as an employé of the Valley Telephone Company, the owner of the pole upon which he was working.  The defendant had reserved the right by ordinance to string, and had strung, two primary electric light wires upon this pole.  The first cross-arm on the pole was used by the Bay City Traction & Electric Company.  The second cross-arm was used by the defendant.  The third and fourth cross-arms were used by the Valley Telephone Company.  In doing the work he was engaged in, deceased stood upon the first cross-arm, astride of the city primary wire nearest the pole; said wire and cross-arm being near or slightly above his knees.  The iron tie wire holding the primary wire against the glass insulator was imbedded into, and had cut through, the insulation of the primary wire, and a portion of the insulation was broken off the tie wire near the end.  While deceased was grounded, he in some way came in contact with the primary wire and received a fatal shock.  Plaintiff recovered judgment, and defendant brings the record to this court for review, insisting that a verdict should have been directed in its favor for the following reasons:

(1) That there is no common-law or statutory liability for such damages against municipal corporations in this State, and as a governmental agency defendant cannot be held liable in this suit.

(2) That decedent assumed the risk in going upon the cross-arms.

(3) That decedent was guilty of contributory negligence as a matter of law.

(4) Defendant was not responsible for such unnatural and improper condition of said wire.

Defendant also contends:

(5) That the court erred in charging the jury both as to the law and the facts in this case.

(6) The court erred in denying defendant's motion for a new trial for the reasons therein contained.

1. At the time of the accident, the defendant was, and for some time had been, engaged in furnishing electric lighting to its inhabitants for compensation, as well as in lighting its streets, public places, and buildings. The lamps used for street lighting were the series arc lamps which were operated by the direct current. For all the commercial lighting the alternating system was used. Separate dynamos and separate wires were used for the two systems. The defective wire which caused the death of Mr. Hodgins was carrying the alternating current and was part of the commercial lighting system. Defendant argues that the electric lighting department, like the fire department, of a municipality, is an agency of local government for the public purpose of benefit to the local community, and the rule that exempts the municipality from liability for the negligence of members of the fire department logically extends to the electric lighting department. We do not think the cases cited by counsel require such a conclusion.

In *Mitchell* v. *City of Negaunee*, 113 Mich. 359 (38 L. R. A. 157), the question before the court was:

" Can the legislature authorize municipalities to own

electric lighting plants which shall furnish not only the lights needed by the municipality but lights to its citizens ?"

It was held that light, like water, is a necessity for all, and the furnishing thereof was so far for a public purpose as to sustain the power of the legislature to confer upon municipalities the right to furnish both under proper restrictions. In support of its conclusion, the court quoted at length from *Opinion of the Justices*, 150 Mass. 592 ( 8 L. R. A. 487 ), and cited Indiana and Ohio cases. The decisions in Massachusetts and Indiana (see *Dickinson* v. *City of Boston*, 188 Mass. 595 ( 1 L. R. A. [N. S.] 664 ), and *Aiken* v. *City of Columbus*, 167 Ind. 139 ( 12 L. R. A. [N. S.] 416 ), make it clear that, in holding that the furnishing of such a present day necessity as electric light is within the public purpose necessary to authorize the power of taxation, it was not intended to affect the rules of liability pertaining to the exercise of such franchises. *Mitchell* v. *City of Negaunee*, supra, contains no implication that the public purpose authorizing the delegation of the power of taxation places the municipality in the category of governmental agencies discharged from liability for the negligence of its officers and employés. In *Davidson* v. *Hine*, 151 Mich. 294 ( 15 L. R. A. [N. S.] 575), it was held that a city fire department is a local government agency and not an agency of the State government, and that an act of the legislature authorizing the governor to appoint the members of a bureau of safety to have charge of such fire department was unconstitutional, as being in violation of the constitutional right of self-government conferred upon municipalities. It was contended in that case that the holding of this court in *Brink* v. *City of Grand Rapids*, 144 Mich. 472, that the city was not responsible for the negligence of the employés of the fire department, was conclusive that such department was an agency of the State and not of the local government. It was said in reply to this contention that the case of *Brink* v. *City of Grand Rapids* rests upon the proposition that :

"A municipality is not responsible for negligent injuries to persons or property committed by members of a fire department when engaged in work pertaining exclusively to the extinguishment of fires. * * * It cannot be said that a municipality is responsible for all the negligence of its officers when they are engaged in performing a local governmental duty, and therefore it is not true that exemption from such responsibility proves that they are not performing a local governmental duty."

It was not intended by that decision to overrule *Ostrander* v. *City of Lansing*, 111 Mich. 693, and cognate cases. In the latter case the city was exercising its local governmental functions in the construction of a public sewer and was held liable for the negligence of its employés; it appearing that the charter of the city of Lansing contained a provision authorizing the obtaining of revenue from such sewers.

In *Stevens* v. *City of Muskegon*, 111 Mich. 72 (36 L. R. A. 777), the distinction is stated, quoting the language of Chief Justice Nelson, in *Bailey* v. *Mayor, etc., of New York*, 3 Hill (N. Y.), 539, as follows:

"If granted for public purposes exclusively, they belong to the corporate body in its public political or municipal character; but if the grant was for purposes of private advantage and emolument, though the public may derive a common benefit therefrom, the corporation quoad hoc is to be regarded as a private company. It stands on the same footing as would any individual or body of persons upon whom the like special franchises had been conferred."

Although it was said in *Davidson* v. *Hine*, that "a municipal fire department is indistinguishable from a system of municipal waterworks which is authoritatively determined to be an agency of municipal government," and that Justice COOLEY, in delivering the opinion of the court in *People, ex rel. Board of Park Com'rs*, v. *Detroit Common Council*, 28 Mich. 228, clearly recognizes that "in Michigan the doctrine that a municipality is responsible for the negligence of its officers when engaged in per-

forming a local governmental duty does not obtain," it was only intended thereby, as in the *Brink Case,* to exclude liability when the function exercised was for the exclusive benefit of the local public, without private advantage or emolument to the corporation. It was not intended to wholly abolish the distinction stated by Chief Justice Nelson in *Bailey* v. *Mayor, etc., of New York,* 3 Hill (N. Y.), 531, and cited with approval by Justice Cooley in *People, ex rel. Board of Park Com'rs,* v. *Detroit Common Council,* supra. We are therefore of the opinion that the municipality, in furnishing electric light, is discharged from liability for the negligence of its officers, agents, and employés when furnishing the service for lighting its public streets, public places, and buildings, and that it is liable for such negligence in furnishing light to its inhabitants for remuneration.

2. This point was abandoned upon the oral argument.

3. The pole upon which decedent was working belonged to his employer, the Valley Telephone Company, and the right of the city to use the pole was derived from the ordinance, which provided that:

" The city shall have the right to use any or all poles erected by the Valley Telephone Company, within the corporate limits of the city, for stringing fire-alarm wires, or other wires, the property of said city."

Decedent owed no duty to defendant. On the contrary, defendant, knowing that decedent's duties would require him to work upon his employer's cross-arms and wires above its own, and knowing the extremely dangerous current its wires carried, was charged with the highest degree of care in furnishing a safe wire in the first instance and in making sufficient inspections and of sufficient frequency to keep the wires in a reasonably safe condition; and in going upon the pole to perform his work decedent had a right to rely to some extent upon the defendant's discharge of its duty. Considered in the light of these principles, we do not think it can be said, as a matter of law,

that decedent was guilty of contributory negligence. Mr. Hodgins was a man of long experience in this line of work. His employer's manager testified:

"He was one of the most experienced men in that line I have ever known or ever had work for me. I have always thought he was very careful and prudent; sometimes thought he carried it a little too far."

There was competent testimony tending to show that decedent was doing his work in a proper manner, and, unless the testimony compels the conclusion that he was negligent in not discovering the dangerous condition of the wire, the question of his contributory negligence was for the jury. The primary wire which caused his death had been erected less than two months before, and the insulation on the wire was generally in good condition, and, except for the break in the insulation of the primary wire and of the tie wire where it was tied to the insulator, the wire was harmless. Decedent was engaged in stringing a heavy lead cable containing 204 telephone wires, and at the time of his death was endeavoring to make a proper bend in the cable so as to bring it down the pole to eventually connect with the Valley Telephone Company's office. It was a bright, cloudless day, and had been dry during the whole day. His manager testified:

"He would climb with his front to the pole. I know where the offending place was that led to his death on the wire. In climbing up the pole as I have described, this place would be back of him, and in this position he would practically have no opportunity to discover the defects then in the construction at that point other than by inspection of the wires as appears here. * * * If there were 2,200 volts in that wire, and the insulation on it was correct, there would be no danger in my putting my hand on it. The danger arises when the insulation is broken or weather-soaked on account of age and the insulating properties being gone out of it."

He also further testified that he examined the wire about half an hour after the accident occurred.

"I made a very close examination, got right up close to it, and examined it very carefully. The burning I could not see until I got very close to it. I might have noticed it two or three feet away if my attention had been called to it. It was cut into the feed wire to a certain extent. You could see that on any wire that was indented. The condition of cutting in along this wire was no more than I would expect to find at any point. The burning indicated that there was a leak or contact, and, if the appearance had not indicated the burning, I could not have told there was anything wrong there."

He and others made a "magneto bell test" the next day, which demonstrated that the insulation on the tie wire and feed wire was cut clear through at that point, and the wires themselves were in actual contact. He also testified that he should consider the insulation on such a wire "absolutely safe for three months." We think the question of decedent's contributory negligence was clearly a question of fact for the jury.

4. Defendant contends: That the testimony of the witnesses McCullough and Crampton shows that they were the persons who made the ties on said wire in July, 1906, and that they would not leave the ends of the tie wire in the condition they were at the time of the accident; that Camp and Kerzrock, employés of the Valley Telephone Company under Mr. Hodgins, testified that its employés moved the city feed wire for their own convenience when working there; that, in view of these facts, it is unreasonable to presume that the line was originally tied as found the day after the accident, and it is a reasonable presumption that Mr. Hodgins knew about his men moving and handling the wires; and that the court erred in instructing the jury that there was nothing to charge decedent with notice of any change made in tying the line. There was competent testimony that, if the tie wire had been changed to the other side of the insulator and retied, the marks of such change would show upon the wires and could readily be detected, that there were no such marks, and, from the appearance of the wire and tie, when exam-

ined after the injury, no change had been made after it was erected. McCullough testified that he did not make the tie in question, to his knowledge, that Crampton and Quackenbush worked with him, and they put up the line from Linn and Midland streets across the river to Saginaw street, etc. Crampton testified that he could not say who did the work on that pole and denied that he tied the wire as it appeared after the accident. Quackenbush, the man who worked with McCullough and Crampton, was not called, and, in view of the testimony of Crampton, McCullough, and the experts, the logical inference is that Quackenbush made the tie as it was found after the accident. The testimony did not tend in any way to show notice of any change on the part of decedent. The court instructed the jury, as requested by defendant:

"If you find that the place where deceased was killed was in a defective condition at the time, and became so after the original construction, at the time he met his death, unless you further find that such condition had existed for such a time as would have enabled the defendant by the use of reasonable diligence to make an inspection, discover the defect, and make the repairs, then the defendant is not liable."

This request fully protected defendant's rights so far as the record warranted the submission of the claim of a change in the tie after the original attachment to the insulator.

5. The fourteenth assignment of error is as follows:

"*Fourteenth.* The court erred in charging the jury as follows: 'Deceased was not called upon before entering upon his work on the pole to examine or inspect the wire and tie on defendant's line at the place in question to learn whether it was properly insulated. Being authorized and required to work upon the pole, he would have a right to assume and believe that defendant had properly constructed, maintained, and inspected it. And unless you find that condition and danger arising from such defect was one so open and plain that it would naturally attract his attention and should have been seen by him in the exercise of ordinary care in and about his work, then I say to

you that he would not be charged with either knowledge or notice of the true condition or danger. He would only stand charged with knowledge and notice of the dangers incident to a wire of equal voltage, similarly situated and properly tied and insulated."

Subsequent to the giving of this instruction, the court charged the jury as follows:

"The degree of care and caution that plaintiff's decedent was required to observe and exercise when he went upon this pole in question was the care and caution that an ordinarily prudent man of 20 years' experience with electric wires and cables, knowing the extremely dangerous character of such wires carrying a high voltage, would ordinarily observe and exercise, having regard to the insulation ordinarily employed. Plaintiff's decedent, because of his experience and knowledge of the dangerous character of electric wires carrying a high voltage of electricity, was called upon to use and exercise greater care than a person who never had such experience or knowledge of the extremely dangerous character of such wires. His degree of care must be commensurate with his experience and knowledge of the dangerous character of electric wires carrying a high voltage of electricity, and if you find that decedent, under the circumstances as I have just stated, failed in such degree of care, for his own safety, he would be guilty of contributory negligence, and plaintiff could not recover. Plaintiff's decedent was a man of several years' experience with electricity, electric wires, telephone wires, cross-arms, etc., and must have known the result of coming in contact with live wires, as well as the purpose and effect of the insulation, and when he went up on this telephone pole in question and out upon the cross-arm carrying these electric wires, I charge you that it was his duty before going out onto such cross-arm and over these electric wires to observe such conditions as were apparent and would naturally attract the attention of a man of ordinary caution under the conditions present, and if by looking he would have discovered that the insulation was stripped off from the tie wire and the tie wire had cut the insulation on the main wire, and that this made the place extremely dangerous, and if he failed in such duty, I then charge you he was guilty of contributory negligence, and in that event your verdict should be no cause of action."

Considering the instructions together, we do not think the jury could have been misled into believing that "the question of due care on the part of deceased was wholly disregarded."

We have considered the remaining assignments of error, and, considering them in connection with the entire charge, we are satisfied that, if technical errors were committed, they were not sufficiently prejudicial to defendant to require a reversal. Upon the whole the case was fairly and impartially submitted to the jury, and the verdict is amply supported by the evidence.

The judgment is affirmed.

GRANT, MONTGOMERY, and OSTRANDER, JJ., concurred. HOOKER, J., concurred in the result.