BEAUCHAMP v SAGINAW TOWNSHIP

1. MUNICIPAL CORPORATIONS—TORTS—GOVERNMENTAL IMMUNITY—
GOVERNMENTAL FUNCTION—STATUTES.

Generally, the test of whether a governmental agency can claim immunity under statute is whether the specific activity alleged against the governmental defendant falls within the exercise or discharge of a governmental function (MCLA 691.1407; MSA 3.996[107]).

2. MUNICIPAL CORPORATIONS—GOVERNMENTAL FUNCTION—DEFINI-
TION.

"Governmental function" is generally defined as a term of art which has been used by the courts to describe those activities of government which, due to their public nature, should not give rise to liability at common law.

3. MUNICIPAL CORPORATIONS—GOVERNMENTAL FUNCTION—COMMON
GOOD—CORPORATE BENEFIT—PROFIT—LIABILITY.

The underlying test in determining whether an activity is a governmental function is whether the act is for the common good of all without the element of special corporate benefit or pecuniary profit; if it is, there is no liability, if it is not there may be liability and whether undertaken voluntarily and not under compulsion of statute is of no consequence.

4. MUNICIPAL CORPORATIONS—GOVERNMENTAL FUNCTION—PUBLIC
HEALTH—SEWERS.

The construction of sewers as a public health measure is a governmental function.

5. MUNICIPAL CORPORATIONS—GOVERNMENTAL FUNCTION—COMMU-
NITY BENEFIT—USE OF FORESIGHT—SEWERS.

Planning for the accommodation of city growth by constructing a

REFERENCES FOR POINTS IN HEADNOTES
[1-3] 57 Am Jur 2d, Municipal, School and State Tort Liability §§ 27, 31-35, 168.
Municipal immunity from liability for torts. 60 ALR2d 1198.
[4, 5] 57 Am Jur 2d, Municipal, School and State Tort Liability §§ 190 *et seq.*

sewer in an undeveloped area is of benefit to the inhabitants of the community, and the use of foresight does not change a governmental function into a nongovernmental function.

Appeal from Saginaw, Fred J. Borchard, J. Submitted December 13, 1976, at Lansing. (Docket No. 26654.) Decided March 2, 1977.

Complaint by Thomas Beauchamp and Betty Beauchamp against Saginaw Township seeking damages for personal injuries arising from an accident during the construction of a township sewer. Summary judgment for defendant. Plaintiffs appeal. Affirmed.

*van Benschoten & van Benschoten, P. C.,* for plaintiffs.

*Collision & Fordney, P. C.,* for defendant.

Before: J. H. GILLIS, P. J., and M. F. CAVANAGH and D. E. HOLBROOK, JR., JJ.

J. H. GILLIS, P. J. Plaintiff Thomas Beauchamp[1] was employed by Anklam Construction Company (hereinafter referred to as Anklam) as a laborer and pipelayer. Anklam had entered into a contract with Saginaw Township (the defendant in this case), a municipal corporation, to construct a sewer system in the undeveloped northeast section of the township. On the morning of August 28, 1973, plaintiff was engaged in laying sewer tiles in a trench being dug by an excavating crane operated by another employee of Anklam. The crane operator, in lowering the excavating bucket into

---

[1] The original complaint was filed by Thomas Beauchamp and his wife, Betty Beauchamp. Betty Beauchamp claimed damages for loss of consortium and support. Because Betty Beauchamp's claims do not pertain to the issues presented on this appeal, we will refer to plaintiff in the singular meaning plaintiff Thomas Beauchamp.

the trench, accidentally caused the bucket to strike plaintiff in the head, neck and shoulder area. As a result of this blow, plaintiff was severely injured and is now a quadriplegic, permanently paralyzed from the neck down.

On August 28, 1975, plaintiffs filed a complaint against defendant municipality alleging that defendant had maintained control over the construction of the sewer system, that the construction was inherently dangerous, and that defendant negligently failed to provide plaintiff with a safe place to work, failed to require safe working procedures and equipment, and failed to warn plaintiff of the danger inherent in the work. Defendant filed a motion for accelerated and/or summary judgment[2] claiming that by virtue of Michigan's governmental immunity statute, MCLA 691.1401 *et seq.;* MSA 3.996(101) *et seq.,* it is immune from liability. The trial court granted defendant's motion. Plaintiff appeals as of right. He argues that defendant is not immune.[3]

MCLA 691.1407; MSA 3.996(107) provides:

"Except as in this act otherwise provided, all governmental agencies shall be immune from tort liability in all cases wherein the government agency is engaged in the exercise or discharge of a governmental function. Except as otherwise provided herein, this act shall not be construed as modifying or restricting the immunity

---

[2] Our reading of the most recent decisions seems to treat the motion as one of summary judgment. *See McCann v Michigan,* 398 Mich 65, 73, 76; 247 NW2d 521 (1976), *Thomas v Department of State Highways,* 398 Mich 1, 16; 247 NW2d 530 (1976), and *compare Galli v Kirkeby,* 398 Mich 527, 539; 248 NW2d 149 (1976), Opinion by Justice COLEMAN, and *Robinson v Emmet County Road Commission,* 72 Mich App 623; 251 NW2d 90 (1976).

[3] Plaintiff also challenges the constitutionality of the immunity statute. We interpret *Galli v Kirkeby, supra, McCann v Michigan, supra,* and *Thomas v Department of State Highways, supra,* to affirm the constitutionality of that statute.

of the state from tort liability as it existed heretofore, which immunity is affirmed."

Recently, the Michigan Supreme Court has had occasion to apply and interpret the above statute. As of this date, we have been presented with three of these decisions.[4] These three cases contain within them 11 separate opinions. Justice WIL- LIAMS has summarized the general consensus to be that "the test of whether a governmental agency can claim immunity under the statute is whether the specific activity alleged against the governmental defendant falls within 'the exercise or discharge of a governmental function'". *Galli v Kirkeby,* 398 Mich 527, 536; 248 NW2d 149 (1976), opinion by WILLIAMS, J. Our inquiry thus becomes, is the construction of a sewer by a municipal corporation activity in discharge of a governmental function?

The majority opinion in *Thomas v Department of State Highways,* 398 Mich 1; 247 NW2d 530 (1976), generally defined "governmental function" as:

"a term of art which has been used by the courts of this state to describe those activities of government which due to their public nature should not give rise to liability at common law." 398 Mich at 9.

In utilizing that definition a majority of our Supreme Court agrees that maintenance and improvement of a highway is a governmental function, *Thomas v Department of State Highways, supra,* the malicious activity of state hospital employees in discouraging plaintiff's customers from doing business with his newspaper is not activity

---

[4] *Galli v Kirkeby, supra, McCann v Michigan, supra, Thomas v Department of State Highways, supra.*

within the exercise of a governmental function, *McCann v Michigan,* 398 Mich 65; 247 NW2d 521 (1976), and screening, hiring and supervision of school personnel are governmental functions, *Galli v Kirkeby, supra.*

We have been instructed that in making determinations of whether a given activity is or is not a governmental function we should analyze the given situations on a case by case basis. Our tools include the available case law, and, when the same is not clear, we are to utilize our "own creative genius" in adapting the case law to resolve the problem at hand. *Thomas v Department of State Highways, supra,* at 11. Our examination, analysis and resolution follow.

It developed historically that cities operated under one of two personalities. The municipality when acting as an arm of the state possessed a "public" character, but when acting for the concerns of the citizenry of the city it was functioning within its "private" personality. This public versus private analysis was utilized in evaluating questions of municipal tort immunity. If wearing the public hat, the municipal corporation was said to be performing governmentally and was immune from tort liability as was the state. On the other hand, if the activity was for the benefit of the peculiar locality, then the municipal corporation was deemed equivalent to a private corporation. See, *e.g., Board of Commissioners v Common Council,* 28 Mich 228; 15 AR 202 (1873), *Barron v Detroit,* 94 Mich 601; 54 NW 273 (1893), *Gilboy v Detroit,* 115 Mich 121; 73 NW 128 (1897). Additionally, the city as an owner of property was regarded as a private concern. *People v Hurlbut,* 24 Mich 44; 9 AR 103 (1871). It was from this theory that our Supreme Court affirmed a damage award to a

plaintiff who had fallen into a sewer ditch being dug on a city street. They stated:

"The sewers of the city, like its works for supplying the city with water, are the private property of the city —they belong to the city. The corporation and its corporators, the citizens, are alone interested in them— the outside public or people of the state at large have no interest in them, as they have in the streets of the city, which are public highways." *Detroit v Corey,* 9 Mich 165, 184; 80 AR 78 (1861).

In *Ostrander v Lansing,* 111 Mich 693; 70 NW 332 (1897), the Court cited *Corey* and reiterated that sewer construction is a private municipal enterprise rather than a governmental function.

With the advent of extensive "home rule" legislation this public, private dichotomy of municipal tort liability was refined. Cities developed an immunity of their own and were excluded from liability "when the function exercised was for the exclusive benefit of the local public, without private advantage or emolument to the corporation." *Hodgins v Bay City,* 156 Mich 687, 692; 121 NW 274 (1909). The focus shifted from a question of the locality of the function and the recipients thereof to a question of the nature of the operation and profit derived therefrom. The cases are confusing; in one situation finding liability due to an incidental profit arising from the activity, *Foss v Lansing,* 237 Mich 633; 212 NW 952 (1927), while in another situation finding immunity if the profit is incidental to the main purpose of the exercised function, *Johnson v Board of County Road Commissioners,* 253 Mich 465; 235 NW 221 (1931). Cooperrider, *The Court, the Legislature, and Governmental Tort Liability in Michigan,* 72 Mich L Rev 187, 229–237 (1973). One could break down the

fact situations presented in the available cases, dissect their own factual components, and then determine which analysis better applies to the facts in question in order to reconcile and distinguish the seeming inconsistencies among the precedents. Rather than partake in the painful task of separating, distinguishing, applying, analyzing and reanalyzing, suffice it to say that the present message seems to thrust on the purpose of the engaged-in activity rather than on the result (profit).[5]

" 'The underlying test is whether the act is for the common good of all without the element of special corporate benefit or pecuniary profit. If it is, there is no liability; if it is not, there may be liability. That it may be undertaken voluntarily and not under compulsion of statute is not of consequence.' *Gunther v Cheboygan County Road Commissioners,* 225 Mich 619; [196 NW 386 (1923)], *Johnson v Ontonagon County Road Commissioners,* 253 Mich 465; [235 NW 221 (1931)], *Daszkiewicz v Detroit Board of Education,* 301 Mich 212; [3 NW2d 71 (1942)]." *Martinson v Alpena,* 328 Mich 595, 598; 44 NW2d 148 (1950). Cited with approval in *McCann v Michigan, supra,* at 79.

It is true that sewers have consistently been grouped on the private side of the public, private dichotomy. Sewers were originally constructed and maintained by the city as a business enterprise, *Cooperrider, supra,* at 229, and thought of as a

---

[5] Often a city may be engaging in a dual function. In those situations, the more practical approach is to determine the primary purpose of the activity in question. *See Carlisi v City of Marysville,* 373 Mich 198; 128 NW2d 477 (1964), *Munson v Menominee County,* 371 Mich 504; 124 NW2d 246 (1963), *Dohm v Acme Twp,* 354 Mich 447; 93 NW2d 323 (1958).

This analysis seems consistent with the present direction to focus on the "complained of activity" and also with the disapproval of the principle that if an activity is nonproprietary, then it must be governmental. *See McCann v Michigan, supra,* at 79, and *Thomas v Department of State Highways, supra,* at 19, fn 7.

strictly local concern with the remainder of the state having no interest at all in their construction or maintenance. We need not discuss at great length the importance of properly maintained sewage systems, nor the disasterous effects on the failure to so provide. Today, sewage systems are recognized as a necessary element for the health of the public in providing for disposal of waste and purification of water. The sewage system of one city, if inadequate, may have tremendous effects on a neighboring city. *Detroit v Village of Highland Park,* 186 Mich 166; 152 NW 1002 (1915).

" 'The drainage of a city in the interests of the public health * * * is one of the most important purposes for which the police power can be exercised.' " *Detroit v Village of Highland Park, supra,* at 184, citing *New Orleans Gaslight Co v Commission,* 197 US 453; 25 S Ct 471; 49 L Ed 831 (1905).

It has been held that collection of garbage by a city is a governmental function due to its role in the protection of health. *Sommers v Detroit,* 284 Mich 67; 278 NW 767 (1938). We cannot distinguish sewers, and find that the construction of sewers as a public health measure is a governmental function.

Plaintiff asserts that although sewer construction may be governmental in scope that in this case the sewers were constructed in an undeveloped area making the benefit not for the good of all but rather specific to defendant in that increased development would increase the tax base of the municipality. Planning and projecting are integral functions of city government. Present needs are constantly changing. It is a wise city planner who examines and analyzes growth and plans accordingly. It is more likely than not that

the city will benefit from growth and prosperity, but planning for the accommodation of growth either by building a school, a park, or a sewer can hardly be said to be of special corporate benefit. The benefit is to the inhabitants of the community. The use of foresight does not change a governmental function into a nongovernmental function.

Plaintiff has failed to persuade us that defendant has derived a peculiar benefit from the construction of the sewers here in question.

Affirmed. No costs, a public question being involved.