# STATE OF MICHIGAN

# COURT OF APPEALS

---

BEATRICE BOLER, EDWIN ANDERSON, ALLINE ANDERSON, and EPCO SALES, LLC,

        Plaintiffs-Appellees,

v

GOVERNOR, STATE OF MICHIGAN, DEPARTMENT OF ENVIRONMENTAL QUALITY, and DEPARTMENT OF HEALTH AND HUMAN SERVICES,

        Defendants-Appellees,

and

DANIEL WYANT, LIANE SHEKTER-SMITH, ADAM ROSENTHAL, STEPHEN BUSCH, PATRICK COOK, MICHAEL PRYSBY, BRADLEY WURFEL, ED KURTZ, DARNELL EARLEY, GERARD AMBROSE, LOCKWOOD, ANDREWS & NEWMAN, P.C., and LOCKWOOD, ANDREWS & NEWMAN, INC.,

        Defendants,

and

DAYNE WALLING, HOWARD CROFT, MICHAEL GLASGLOW, DAUGHERTY JOHNSON III, and CITY OF FLINT,

        Defendants-Appellants.

FOR PUBLICATION
June 14, 2018
9:00 a.m.

No. 337383
Court of Claims
LC No. 16-000126-MK

---

-1-

Before: SERVITTO, P.J., and MARKEY and O'CONNELL, JJ.

PER CURIAM.

Defendants, Dayne Walling, Howard Croft, Michael Glasglow, Daugherty Johnson III and the City of Flint (hereafter "defendants") appeal as of right the trial court's sua sponte order dismissing plaintiffs' claims against them for lack of subject matter jurisdiction. We affirm.

Plaintiffs, residents and a company located in the City of Flint, filed this lawsuit in June 2016 (purportedly as a class action) against the City, various of its officers and employees, former emergency managers of the City, the governor, the State of Michigan, the Michigan Department of Environmental Quality ("MDEQ") and various employees of the MDEQ, with respect to the contaminated water supply in Flint, Michigan. Plaintiffs alleged that defendants conspired to keep the seriousness of the pollution and contamination from plaintiffs and allowed the water supply to keep being delivered, risking plaintiffs' health and causing them damages. The specific causes of action were breach of contract, unjust enrichment, and declaratory relief.

Darnell Earley, Gerard Ambrose, and defendants moved for summary disposition in lieu of answering the complaint. Relevant to the instant matter, before a decision was rendered on that motion, the court, on its own motion, dismissed plaintiffs' claims against defendants "in accordance with the August 25, 2016 opinion and order issued in *Collins v City of Flint, et al.*, Court of Court of Claims Docket No. 16-115-MZ and *Vale v City of Flint*, Court of Claims Docket No. 16-116-MK." In those cases, the plaintiffs commenced intended class action lawsuits in Genesee Circuit Court against the Governor, the State of Michigan, the City of Flint, the City's former emergency managers, and several City employees regarding the water crisis in Flint. Plaintiffs asserted that defendants breached a contract with residents to provide potable water, breached an implied warranty of fitness for a particular purpose, violated the Michigan Consumer Protection Act, and unjustly enriched the City. The City transferred the claims against the City, the former emergency manager, and city employees from Genesee Circuit to the Court of Claims. Plaintiffs challenged the validity of the notice of transfer contending that the City was an "arm of the state" as set forth in MCL 600.6419(1)(a). Plaintiff in the *Vale* case sought summary disposition for lack of the Court of Claims subject matter jurisdiction. The Court of Claims found that the City was not an arm of the state and that the claims against the City and its employees were within the exclusive subject matter jurisdiction of the circuit court.[1]

On appeal, defendants assert that municipalities act as arms of the state whenever they act in the name of public health and municipalities operate waterworks in the name of public health. Defendants additionally assert that the state's emergency management of a municipality under

---

[1] The Court of Claims concluded that it did have jurisdiction over claims against emergency manager Darnell Earley because he was an officer of the state at all times while overseeing the City's receivership. Nevertheless, because Earley had a right to a jury trial and the circuit court had concurrent jurisdiction, the Court of Claims found that the circuit court was the more appropriate venue to resolve the claims against Earley.

the Local Financial Stability and Choice Act transforms the municipality into an arm of the state and that the Court of Claims has exclusive jurisdiction over claims brought against arms of the state. We disagree and conclude that (1) municipalities are not arms of the state when they operate a waterworks plant, and (2) that municipalities and their employees operating under the state's emergency manager laws are not arms of the state for purposes of jurisdiction in the Court of Claims.

Issues concerning the jurisdiction of the Court of Claims present statutory questions that are reviewed de novo as questions of law. *AFSCME Council 25 v State Employees' Ret Sys*, 294 Mich App 1, 6; 818 NW2d 337 (2011). Challenges to subject-matter jurisdiction cannot be waived, and a court must entertain such challenges regardless of when they are raised, or even raise such challenges sua sponte, as was the case here. *O'Connell v Dir of Elections*, 316 Mich App 91, 100; 891 NW2d 240 (2016).

"The Court of Claims is created by statute and the scope of its subject-matter jurisdiction is explicit." *O'Connell v Dir of Elections*, 316 Mich App 91, 101; 891 NW2d 240 (2016), quoting *Dunbar v Dep't of Mental Health*, 197 Mich App 1, 5; 495 NW2d 152 (1992). The Court of Claims has exclusive jurisdiction to hear and determine "any claim or demand, statutory or constitutional, liquidated or unliquidated, ex contractu or ex delicto, or any demand for monetary, equitable, or declaratory relief or any demand for an extraordinary writ against the state or any of its departments or officers . . . ." MCL 600.6419(1)(a). Included in the definition of "the state or any of its departments or officers" are the State of Michigan and:

> any state governing, legislative, or judicial body, department, commission, board, institution, arm, or agency of the state, or an officer, employee, or volunteer of this state or any governing, legislative, or judicial body, department, commission, board, institution, arm, or agency of this state, acting, or who reasonably believes that he or she is acting, within the scope of his or her authority while engaged in or discharging a government function in the course of his or her duties. [MCL 600.6419(7)]

The determination of whether the Court of Claims possesses jurisdiction is governed by the actual nature of the claim, not how the parties characterize the nature of the claim or the request for relief. *AFSCME Council 25*, 294 Mich App at 6.

At issue in this case is the phrase "arm of the state" in MCL 600.6419(7). More specifically, we must determine when one would be considered to be an arm of the state such that one would therefore be considered "the state or any of its departments or officers" and thus that an action against it would fall under the exclusive jurisdiction of the Court of Claims.

The difficulty in determining when a city or municipality acts as an arm of the state has a long history. In *Tzatzken v City of Detroit*, 226 Mich 603, 604; 198 NW 214 (1924), our Supreme Court suggested that a municipality exercises dual powers, acting sometimes as an arm of the state, in which all the members of the public are concerned, and acting at other times independently by exercising powers of a proprietary character. This Court explained the dual roles undertaken by a city or municipality:

It developed historically that cities operated under one of two personalities. The municipality when acting as an arm of the state possessed a "public" character, but when acting for the concerns of the citizenry of the city it was functioning within its "private" personality. This public versus private analysis was utilized in evaluating questions of municipal tort immunity. If wearing the public hat, the municipal corporation was said to be performing governmentally and was immune from tort liability as was the state. On the other hand, if the activity was for the benefit of the peculiar locality, then the municipal corporation was deemed equivalent to a private corporation. [*Beauchamp v Saginaw Twp*, 74 Mich App 44, 48; 253 NW2d 355 (1977)]

The conclusions about what municipal activities constituted "public" (i.e., arm of state) or private" (i.e., municipal) action have still, however, varied and have changed throughout the years. In *Curry v City of Highland Park*, 242 Mich 614, 621; 219 NW 745 (1928), our Supreme Court recognized and accepted out-of-state authority holding that a city is in the discharge of a governmental function in the collection and disposal of garbage and in the collection of ashes, refuse, and street sweepings. The *Curry* Court noted, "In each instance the act of the municipality is in the interest of the public health and the municipality acts as the arm of the state." *Id*. The *Curry* Court also noted Michigan cases recognizing that "ordinances regulating the collection and disposal of garbage upon the ground that they were a valid exercise of the police power" and found it to be a state government function. *Id*. at 621–22. In *Detroit v Corey*, 9 Mich 165, 184; 80 AR 78 (1861) our Supreme Court held "The sewers of the city, like its works for supplying the city with water, are the private property of the city—they belong to the city. The corporation and its corporators, the citizens, are alone interested in them—the outside public or people of the state at large have no interest in them, as they have in the streets of the city, which are public highways." In *Beauchamp*, 74 Mich App at 51, however, this Court stated, "[w]e cannot distinguish sewers [from the collection and disposal of garbage], and find that the construction of sewers as a public health measure is a governmental function."

In *Attorney Gen v City of Detroit*, 225 Mich 631; 196 NW 391 (1923), the City of Detroit adopted an ordinance regulating the wages paid to third-party employees working on municipal construction contracts. The Supreme Court stated:

That the municipality performs dual functions, some local in character, the others as agent of the state, will be presently considered; and, while this court from the beginning has vigilantly sustained the right of local self-government, it has with equal vigilance sustained the right of the state in the exercise of its sovereign power. Attempts of the state to meddle with the purely local affairs of a municipality have been promptly checked by this court, and attempts of municipalities to arrogate to themselves power possessed by the state alone in its sovereign capacity must meet a like check at the hands of this court. Neither may trench upon the power possessed by the other alone. [*Id*. at 636]

The Court held that in enacting the ordinances at issue, "the city has undertaken to exercise the police power not only over matters of municipal concern, but also over matters of state concern; it has undertaken not only to fix a public policy for its activities which are purely local but also

for its activities as an arm of the state." *Id*. at 640-641. It thus found that wage rates were a matter of state concern.

Our Supreme Court, however, overruled *Attorney Gen v City of Detroit* in the recent case of *Associated Builders & Contractors v City of Lansing*, 499 Mich 177; 880 NW2d 765 (2016). In *Associated Builders*, the Court stated that the *Attorney Gen* court's "conception of municipal power may or may not have been well-grounded in Michigan's 1908 Constitution and the legal landscape of the time, but it is certainly incongruent with the state of our law as reflected in our current Constitution. We therefore conclude that [*Attorney Gen*] has no continuing viability in light of the adoption of our 1963 Constitution." *Associated Builders & Contractors*, 499 Mich at 183. The *Associated Builders* Court explained that the revisions found in Michigan's 1963 Constitution reflected Michigan's successful experience with home rule and expressed the people's will to give municipalities even greater latitude to conduct their business. *Id*. at 186. The revised constitution thus expanded the scope of authority of Michigan's cities and villages. The Court determined that the wage rates at issue "concern how a municipality acts as a market participant, spending its own money on its own projects" and that "[u]nder our Constitution, cities and villages may enact ordinances relating to 'municipal concerns, property and government,' including ordinances and charter provisions regulating the wages paid to third-party employees working on municipal construction contracts, 'subject to the constitution and law.' " *Id*. at 187, 192 (citations omitted). Thus, as the legal landscape changed, so too, has the interpretation of what constitutes an action taken as an arm of the state. This is particularly so in the realm of utilities or services.

With respect to waterworks in particular, the Home Rule City Act, MCL 117.1 et seq.[2], provides that a municipality may provide for the installation and connection of sewers and waterworks in its charter. MCL 117.4b. The operation and maintenance of waterworks is generally found to be a proprietary or private function of a municipality as opposed to a governmental function. Exceptions, as always, do exist, but they are easily identifiable. "Although a city may in the construction, operation, and maintenance of a waterworks system be acting, under certain factual circumstances, in a governmental capacity, as a general proposition the weight of authority is to the effect that in engaging in such an enterprise the city acts in a proprietary or private capacity." *Taber v City of Benton Harbor*, 280 Mich 522, 525; 274 NW 324 (1937). The cases cited in *Taber* were out-of-state cases and only one set forth a factual situation where maintenance of a waterworks could be deemed a governmental function.

In *Miller Grocery Co v City of Des* Moines, 195 Iowa 1310; 192 NW 306 (1923) the court held that a municipality, acting in government capacity has right to maintain and operate waterworks for the purpose of fire protection but also had the right, in its proprietary capacity, to operate waterworks to distribute water to citizens and receive money for the same. The majority of cases cited in *Taber* reiterated that a municipality supplying water to its citizens did so in a proprietary function. See, *Woodward v Livermore Falls Water Dist*, 116 Me 86; 100 A 317

---

[2] Enacted in 1909, it provided for the incorporation of cities and set out specific powers and duties, among other things.

(1917) (a municipal corporation engaged in the business of supplying water to its inhabitants is engaged in an undertaking of a private nature because it entered into enterprise which involved the ordinary incidents of a business wherein it sold what people desired to buy and which might become a source of profit); *Canavan v City of Mechanicville*, 229 NY 473, 476; 128 NE 882 (1920) ("While the business of maintaining a municipal water system and supplying water to private consumers at fixed compensation is public in its nature and impressed with a public interest, it is not an exercise of governmental or police power. A municipal corporation in aggregating and supplying water for the extinguishment of fires discharges a governmental function. In operating a waterworks system, distributing water for a price to its inhabitants, it acts in its private or proprietary capacity, in which it is governed by the same rules that apply to a private corporation so acting.").

What is gleaned from these cases is that if a municipality is supplying a utility, or specifically waterworks, to its citizens and the citizens are paying for the same, the municipality is operating the waterworks as a business and it is doing so as a businessman or corporation, not as a concern of the state government or arm of the state. It is, after all, serving only a limited number of people within its boundaries, not the state as a whole. If, on the other hand, the municipality is supplying water for the purpose of protecting its citizens from fire or natural disaster or anything else that has the potential to have state-wide impact, and it is not profiting from the provision of that water, it could perhaps then be deemed to be serving a government function and serving the public in general. Then it could be deemed to be acting as an arm of the state in maintaining and operating waterworks.

Taking all of the above into account, it can be concluded that the City was not acting as an arm of the state when operating its waterworks. Historically, a municipality's providing drinking water to its citizens, which is precisely the issue here, was not found to be a government function because the municipality was acting as a proprietor, not in a governmental capacity in doing so. And, with the enactment of the Home Rule City Act and the adoption of the 1963 constitution, municipalities were provided with even more power and control over activities such as providing utilities or services to its population. The City has provided no persuasive argument or binding authority to indicate that the City was acting as an arm of the state when operating its waterworks. The Court of Claims thus did not have exclusive jurisdiction over plaintiffs' claims against defendants.

The City has also provided no persuasive argument or binding authority to indicate that the State of Michigan's emergency management of a municipality under the Local Financial Stability and Choice Act transforms the municipality into an "arm of the state." Effective March 28, 2013, Michigan enacted the Local Financial Stability and Choice Act. That Act states, at MCL 141.1543:

The legislature finds and declares all of the following:

(a) That the health, safety, and welfare of the citizens of this state would be materially and adversely affected by the insolvency of local governments and that the fiscal accountability of local governments is vitally necessary to the interests of the citizens of this state to assure the provision of necessary governmental services essential to public health, safety, and welfare.

-6-

(b) That it is vitally necessary to protect the credit of this state and its political subdivisions and that it is necessary for the public good and it is a valid public purpose for this state to take action and to assist a local government in a financial emergency so as to remedy the financial emergency by requiring prudent fiscal management and efficient provision of services, permitting the restructuring of contractual obligations, and prescribing the powers and duties of state and local government officials and emergency managers.

(c) That the fiscal stability of local governments is necessary to the health, safety, and welfare of the citizens of this state and it is a valid public purpose for this state to assist a local government in a condition of financial emergency by providing for procedures of alternative dispute resolution between a local government and its creditors to resolve disputes, to determine criteria for establishing the existence of a financial emergency, and to set forth the conditions for a local government to exercise powers under federal bankruptcy law.

(d) That the authority and powers conferred by this act constitute a necessary program and serve a valid public purpose.

An emergency manager is appointed by the governor following a determination by the governor that a local government is in a state of financial emergency. MCL 141.1546(1)(b); MCL 141.1549(1). When appointed, an emergency manager "shall act for and in the place and stead of the governing body and the office of chief administrative officer of the local government. The emergency manager shall have broad powers in receivership to rectify the financial emergency and to assure the fiscal accountability of the local government and the local government's capacity to provide or cause to be provided necessary governmental services essential to the public health, safety, and welfare." MCL 141.1549(2). The State of Michigan provides the financial compensation for the emergency manager, MCL 141.1549(3)(e), (f), and all powers of the emergency manager are conferred by the Legislature. MCL 141.1549(4) and (5); MCL 141.1550—MCL 141.1559. An emergency manager, as an appointee of the state government, is an employee of the state government. *Mays v Snyder*, __ Mich App __; __ NW2d __ (2018). While this means that claims against an emergency manager acting in his or her official capacity clearly fall within subject-matter jurisdiction of the Court of Claims, it does not necessarily follow that the municipality itself transforms into an "arm of the state" while under the direction of an emergency manager.

The only Michigan authority to attempt to specifically define "arm" of the state is *Manuel v Gill*, 481 Mich 637, 650; 753 NW2d 48 (2008). In that case, our Supreme Court noted that though it was not aware of any law creating an arm of the state, "the term is commonly defined as 'an administrative or operational branch of an organization' . . . ." The *Manuel* Court was determining whether a Tri-County Metro Narcotic Squad was a *state agency* that may only be sued in the Court of Claims, but it looked to MCL 600.6419(1)(a) and the various listed state entities over whom the Court of Claims had exclusive jurisdiction. In doing so, it reviewed the definitions of those various entities and employed a standard dictionary to define an "arm" of the state. This statement in *Manuel* is dicta, attempted to define only the term "arm", and the definition provided gives only limited guidance on the matter at hand.

Because the term is not defined in the relevant statute, we are to ascribe its plain and ordinary meaning. *Inter Co-op Council v Tax Tribunal Dept of Treasury*, 257 Mich App 219, 223; 668 NW2d 181 (2003). It is appropriate to consult a dictionary for definitions. *Anzaldua v Neogen Corp*, 292 Mich App 626, 632; 808 NW2d 804 (2011). "Arm of the state" is defined in Black's Law Dictionary (10th ed.) as, "An entity created by a state and operating as an alter ego or instrumentality of the state, such as a state university or a state department of transportation." "Instrumentality" is defined as "A means or agency through which a function of another entity is accomplished, such as a branch of a governing body." *Id*. It is unclear why the *Manuel* Court chose to look to a standard dictionary rather than the law dictionary when touching on the definition of "arm" of the state. In any event, employing the definition set forth in Black's Law Dictionary, it is clear that even while under emergency management, the City was not operating as an alter ego or instrumentality of the State.

As indicated in the Local Financial Stability and Choice Act, "it is a valid public purpose for this state to take action and to assist a local government in a financial emergency so as to remedy the financial emergency . . . ." MCL 141.1543(b). The primary purpose of the Act, then, was for the State of Michigan to *assist* local governments temporarily during a financial crisis. The emergency manager acts in the place of the chief administrative officer and governing body for and on behalf of the local government only. MCL 141.1549(2); MCL 141.1552(2). At all times, then, the City remained a municipality, albeit with a state employee temporarily overseeing the financial management of the municipality affairs. The City was at no time operating as "a means or agency through which a function of another entity [i.e., the state] is accomplished." No function or purpose of the state was accomplished in the emergency manager overseeing the City. The City was instead always operating as a means through which functions of its own entity were accomplished. The state simply engaged a state employee to temporarily assist the City in performing its functions and serving its local purposes for its citizens. Moreover, were we to find that whenever a state employee assists in, or even temporarily takes over the management of a private (for lack of a better word) entity that entity becomes an arm of the state, we would be opening the State of Michigan up to liabilities that were never intended and undermining the Governmental Tort Liability Act. We thus do not find that the state's emergency management of a municipality under the Local Financial Stability and Choice Act transforms the municipality into an "arm of the state" thereby granting exclusive jurisdiction over plaintiffs' claims against defendants in the Court of Claims.

Affirmed.

/s/ Deborah A. Servitto
/s/ Jane E. Markey
/s/ Peter D. O'Connell

-8-