*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

ESTATE of MICHAEL KNUDSEN, by
MICHAEL J. LONG, Personal Representative,

       Plaintiff/Counter-Defendant-
       Appellant/Cross-Appellee,

v

GEOFFREY FIEGER and FIEGER LAW PC,

       Defendants/Counter-
       Plaintiffs/Third-Party
       Plaintiffs/Appellees-Cross-
       Appellants,

and

RICHARD M GOODMAN, GOODMAN
KALAHAR, DEAN A ROBB, and DEAN ROBB
LAW FIRM,

       Third-Party Defendants/Cross-
       Appellees.

UNPUBLISHED
March 5, 2019

No. 341412
Grand Traverse Circuit Court
LC No. 2016-031437-NM

ZACHARY ALLEN KOTT-MILLARD,

       Plaintiff/Counter-Defendant-
       Appellant/Cross-Appellee,

v

GEOFFREY FIEGER and FIEGER LAW PC,

       Defendants/Counter-
       Plaintiffs/Third-Party

No. 341414
Grand Traverse Circuit Court
LC No. 2016-031442-NM

Plaintiffs/Appellees-Cross-
Appellants,

and

RICHARD M GOODMAN, GOODMAN
KALAHAR, DEAN A ROBB, and DEAN ROBB
LAW FIRM,

Third-Party Defendants/Cross-
Appellees.

Before: Markey, P.J., and M. J. Kelly and Swartzle, JJ.

Per Curiam.

In these consolidated legal malpractice cases, plaintiff Michael J. Long, personal representative of the estate of Michael Knudson, and plaintiff Zachary Allen Kott-Millard, appeal by right the trial court's order of October 24, 2017, granting defendants Geoffrey Fieger and Fieger Law, P.C., summary disposition under the so-called attorney-judgment rule. Plaintiffs allege legal malpractice against the Fieger defendants for failing to assert a tort claim under federal admiralty law against various municipal defendants, including Traverse City, Duncan L. Clinch Marina, Robert Cole, the director of public service for the city, and Barry Smith, the harbormaster. Plaintiffs contend that the Fieger defendants breached the standard of care by failing to invoke federal admiralty jurisdiction, which would have allowed plaintiffs to avoid governmental immunity asserted by the municipal defendants.[1]

Plaintiffs also argue on appeal that the trial court should have granted partial summary disposition in their favor on the issue of the Fieger defendants' negligence in failing to raise an

---

[1] Under the Eleventh Amendment, US Const, Am XI, the United States Supreme Court recognizes state sovereignty that existed before the ratification of the Constitution. "States and arms of the State possess immunity from suits authorized by federal law." *Northern Ins Co of New York v Chatham Co, GA*, 547 US 189, 193; 126 S Ct 1689; 164 L Ed 2d 367 (2006). But lesser state entities such as counties or cities do not enjoy immunity from suits brought under federal law. *Id*. at 193-194. See also, *Boler v Governor*, 324 Mich App 614; ___ NW2d ___ (2018) (holding that the city of Flint and its waterworks were not "arms of the state" because they were "not operating as an alter ego or instrumentality of the State"). The municipal defendants here are not "arms of the state" and in the underlying cases would not have been immune from a tort claim if admiralty jurisdiction applied. See *Northern Ins Co*, 547 US at 193-197.

admiralty claim. Plaintiffs further assert that the trial court abused its discretion by failing to grant them leave to amend their complaint to add an individual claim against Geoffrey Fieger.

Defendants have cross-appealed, asserting several errors by the trial court. Defendants argue that the trial court erred by finding as a matter of law that admiralty jurisdiction existed based on the facts of the underlying tort action and for that reason erred by denying defendants' motion for summary disposition in an August 2, 2016 order. Also, defendants argue that the trial court erred by issuing an order on September 29, 2016, denying defendants' motion for summary disposition. The trial court rejected defendants' argument that plaintiffs could not prove that defendants' alleged malpractice caused damages because after plaintiffs discharged defendants, replacement counsel could have asserted an admiralty claim by moving to amend plaintiffs' complaints or by filing new actions asserting admiralty jurisdiction. Finally, defendants appeal the trial court's August 21, 2017 order dismissing their third-party claim for contribution from Dean Robb and The Dean Rob Law Firm, who referred plaintiffs to Fieger and remained as co-counsel in the underlying tort action.

For the reasons discussed hereafter, we conclude that the trial court did not err by determining that federal admiralty jurisdiction would have applied based on the underlying facts and that the trial court properly denied defendants' motion for summary disposition on the causation issue. We also hold that the trial court did not abuse its discretion by denying plaintiffs' motion for leave to amend their complaints. Further, because questions of material fact remain for trial, plaintiffs were not entitled to partial summary judgment with respect to defendants' alleged negligence and the trial court erred by granting defendants' motion for summary disposition. Finally, defendants are not entitled to relief from the trial court's order dismissing the contribution claim with prejudice because that issue is not ripe. Accordingly, we reverse in part, affirm in part, and remand for further proceedings consistent with this opinion.

## I. SUMMARY OF PERTINENT FACTS AND PROCEEDINGS

In the underlying incident that occurred on August 15, 2011, Knudsen jumped into the water off dock F of Clinch Marina, which is situated in the west arm of Grand Traverse Bay, Lake Michigan. Knudsen drowned because of electricity leaking into the water from the dock; Kott-Millard was injured attempting to rescue Knudsen. Plaintiffs retained Dean Robb and his law firm to represent them, and defendants were retained as co-counsel. Defendants and Robb filed separate actions on plaintiffs' behalves against Traverse City, Clinch Marina, dockmaster Barry Smith, Traverse City Director of Public Services Robert Cole, Grand Traverse County employees Phillip Nault and Dale Stevens, and other non-governmental defendants who had performed work on the dock. After discovery, the defendants in the underlying tort cases filed motions for summary disposition, which the circuit court granted as to most of the city defendants on the basis of governmental immunity in a February 13, 2013 order. But the circuit court denied the motion as to Barry Smith, finding that a question of fact existed regarding gross negligence.

In Docket Nos. 314971 and 314075, Barry Smith appealed by right the circuit court's order denying his motion for summary disposition under MCR 2.116(C)(7) (immunity granted by law). In Docket Nos. 315043 and 315044, plaintiffs appealed by leave the same circuit court order that granted summary disposition to the other city defendants, Traverse City, Clinch

Marina, and Robert Cole. This Court reversed the denial of summary disposition as to Smith, and held that the circuit court properly granted summary disposition as to the other defendants. *Kott-Millard v Traverse City*, unpublished per curiam opinion of the Court of Appeals, issued June 5, 2014 (Docket Nos. 314971; 314975; 315043; 315044). After the underlying proceedings were remanded to the circuit court, plaintiffs retained the law firm of Goodman Kalahar and discharged the Fieger defendants as their attorneys on November 23, 2015. Between August 15, 2015, and October 18, 2015, the circuit court dismissed plaintiffs' claims against the other defendants because of plaintiffs' inability to prove gross negligence. One may refer to this Court's per curiam opinion issued June 5, 2014, for further details regarding the underlying facts and the ruling dismissing plaintiffs' state law claims. Of note, however, is that this Court rejected plaintiffs' argument that the proprietary-function exception to governmental immunity, MCL 691.1413, applied. The Court rejected this argument because "providing and maintaining infrastructure [the marina] to support the local economy is precisely what we expect municipal governments to do." *Kott-Millard*, unpub at 10.

After the Supreme Court denied leave to appeal this Court's decision, *Kott-Millard v Traverse City*, 497 Mich 972 (2015), plaintiffs' remaining claims against the remaining defendants were ultimately dismissed. In February 2016, plaintiffs Long and Kott-Millard, through new counsel, filed separate legal malpractice actions in the trial court against the Fieger defendants. The essence of plaintiffs' claim is that defendants breached the standard of care by failing to plead tort claims against the municipal entities under federal admiralty law. The lynch pin of plaintiffs' theory of the case was that under federal admiralty law the municipal entities, regardless if performing governmental functions, would not enjoy the protection of governmental immunity.[2] The trial court consolidated the two cases.

Defendants moved for summary disposition on two grounds: (1) that the underlying facts could not provide a basis for invoking federal admiralty jurisdiction and (2) because the attorneys retained after the Fieger defendants were discharged did not seek to invoke federal admiralty jurisdiction by either moving to amend the complaint or by filing a new action. Consequently, plaintiffs could not establish that defendants' alleged malpractice caused plaintiffs' damages.

The trial court held a hearing on the issue of admiralty jurisdiction on July 18, 2016, and entered its order on August 2, 2016, denying defendants' motion on the jurisdiction issue. Subsequently, on September 12, 2016, the trial court heard additional arguments on defendants' motion for summary disposition based on lack of causation. See *Boyle v Odette*, 168 Mich App 737; 425 NW2d 472 (1988) (holding that an attorney could not be held liable for failing to bring a certain cause of action "where he ceased to represent plaintiff and was replaced by other counsel before the statutory period ran on [the plaintiff's] underlying action"). Defendants argued that successor counsel could have filed a new action raising an admiralty claim in state or federal court, or sought to amend the plaintiffs' original state law complaint. Plaintiffs argued that a motion to amend would have been denied as untimely and prejudicial to the municipal

---

[2] See n 1, *supra*.

defendants. The trial court agreed with plaintiffs' arguments and denied the motion by order entered September 29, 2016, "for the reasons stated on the record." With respect to filing a separate action after November 2015 when Fieger was discharged, the trial court reasoned that tolling would not have applied to the three-year statute of limitations and that the final judgment as to the municipal defendants would have barred a new complaint under the doctrine of res judicata.

On August 14, 2017, defendants filed another motion for summary disposition, this one based on a claim of being entitled to judgment under the so called attorney-judgment rule. See *Simko v Blake*, 448 Mich 648, 658; 532 NW2d 842 (1995), and *Mitchell v Dougherty*, 249 Mich App 668, 679; 644 NW2d 391 (2002). Defendants contended that the decision of the lead attorney for plaintiffs, Geoffrey Danzig, not to raise a federal maritime claim after one to three hours of research on Yahoo.com reviewing case summaries on admiralty jurisdiction was a "mere error of judgment." Plaintiffs argued that under the facts of this case, defendants could not successfully establish a valid defense on the basis of the attorney-judgment rule. Plaintiffs also filed a motion in limine to preclude defendants' legal experts from testifying that admiralty jurisdiction on the facts of the instant case could not be invoked.

In his deposition, Danzig testified that he considered pursuing a claim under federal admiralty law on behalf of plaintiffs. Danzig, who had never previously handled a federal admiralty claim, researched the issue "and felt that it did not apply to this case in my best judgment, and so I drafted a complaint that didn't include it." Danzig testified that he performed "probably an hour or so worth of research" using Yahoo.com to review "30 or 40 or 50" case summaries regarding admiralty law. Danzig could not recall if any of the case summaries he looked at were United States Supreme Court decisions. Danzig also concluded that there was no admiralty claim to be made because the incident did not involve the "stream of commerce" and because he "didn't consider the Clinch Marina where [the plaintiffs] jumped off the dock to be navigable waters." Danzig concluded that the main reason admiralty jurisdiction would not apply to the facts was because no boat or ship was involved.

The trial court, relying on *Charles Reinhart Co v Winiemko*, 444 Mich 579; 513 NW2d 773 (1994), granted in part plaintiffs' motion in limine, ruling that legal experts would not be permitted to opine that admiralty jurisdiction could not exist under the facts. But the court ruled that defense experts would be permitted to testify that defendants, through Danzig, complied with the standard of care in deciding that no viable admiralty claim existed under the facts of the case. The court ruled that experts "cannot testify that there's no admiralty jurisdiction in the facts of this case" but could testify that "an attorney of average . . . capability, learning, and experience would not have found that there was jurisdiction—would not have brought the case."

Despite these rulings concerning the admissibility of expert testimony at trial, the court also ruled that it would grant defendants' motion for summary disposition under the attorney-judgment rule. The trial court reasoned that the attorney-judgment rule was to protect attorneys whose conduct did not achieve the level of performance required by the standard of care applicable to attorneys. The trial court drew from *Simko* and *Mitchell* that

> even if it is an err[or] in judgment—i.e., meaning it's something that an attorney
> of ordinary learning, judgment, and skill would have done differently—it's

protected from . . . liability. So that . . . really is a broader protection from liability and a different standard than applies to any other professional in their professional liability exposure.

The trial court reasoned that Danzig had recognized the legal hurdle of governmental immunity and performed reasonable legal research by reviewing 30 to 50 admiralty case summaries on Yahoo.com! But the court reasoned that Danzig's decision not to pursue an admiralty claim after his "modest" research was probably incorrect but still protected by the attorney-judgment rule even if his research did not meet the standard of care for attorneys. So, the court concluded that there was no doubt that Danzig was acting in good faith and wanted to do the best for his clients—he just made a mistake. Noting that liability could attach for "gross error," *Mitchell*, 249 Mich App at 679, the court stated that "it doesn't seem to me that Danzig's judgment call and the erroneous judgment call in retrospect can be considered a gross error. So I'm going to grant the motion for summary disposition based on the attorney-judgment rule."

Subsequently, plaintiffs moved for leave to amend their complaints to add claims against Fieger as an individual. The trial court denied the motion as untimely, as failing to state a claim, and as being a futile attempt to restate the claims of the existing complaints. The trial court entered its order granting summary disposition in favor of defendants and dismissing plaintiffs' complaints with prejudice on October 24, 2017. It denied plaintiffs' motion for reconsideration by order entered November 20, 2018.

## II. STANDARDS OF REVIEW

A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of a claim; the trial court's decision regarding the motion is reviewed de novo on appeal. *Karbel v Comerica Bank*, 247 Mich App 90, 95-96; 635 NW2d 69 (2001). The moving party has the burden of identifying and supporting with evidence the issues for which there is no genuine issue of material fact, and which entitle it to judgment as a matter of law. *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 369; 775 NW2d 618 (2009). The moving party may meet its burden either by submitting affirmative evidence that negates an essential element of the nonmoving party's claim or demonstrating that the nonmoving party's evidence is insufficient to establish an essential element of that party's claim. *Quinto v Cross & Peters Co*, 451 Mich 358, 361-362; 547 NW2d 314 (1996). If the moving party adequately supports its motion, "[t]he burden then shifts to the opposing party to establish that a genuine issue of disputed fact exists." *Id*. at 362. The nonmoving party must present specific evidence, the content of which would be admissible at trial, showing that there is a genuine issue of disputed material fact. MCR 2.116(G)(4)-(6); *Barnard Mfg Co*, 285 Mich App at 373. When deciding the motion, a trial court must consider the pleadings, affidavits, depositions, admissions, and other documentary evidence submitted in the light most favorable to the nonmoving party. *Quinto*, 451 Mich at 362. When no material issue of disputed fact exists and the moving party is entitled to judgment as a matter of law, summary disposition is appropriate. *Id*.

The standard of care that an attorney must satisfy in representing a client presents a question of law subject to de novo review. See *Sherry v East Suburban Football League*, 292 Mich App 23, 27; 807 NW2d 859 (2011), citing *Moning v Alfono*, 400 Mich 425, 438; 254

NW2d 759 (1977), and *Persinger v Holst*, 248 Mich App 499, 507; 639 NW2d 594 (2001). The application of the law to the facts of a particular case also presents a question of law reviewed de novo on appeal. *Book-Gilbert v Greenleaf*, 302 Mich App 538, 542; 840 NW2d 743 (2013).

A trial court's decision regarding a motion to amend a complaint is reviewed for an abuse of discretion. *Weymers v Khera*, 454 Mich 639, 654; 563 NW2d 647 (1997). "[A]n abuse of discretion occurs only when the trial court's decision is outside the range of reasonable and principled outcomes." *In re Kostin Estate*, 278 Mich App 47, 51; 748 NW2d 583 (2008).

The existence of admiralty jurisdiction based on the facts of the underlying incident presents a question of law subject to de novo review. *In re Petition of Germain*, 824 F3d 258, 261 (CA 2, 2016) (whether a court has subject-matter jurisdiction is reviewed de novo); *Meisner Law Group PC v Weston Downs Condo Ass'n*, 321 Mich App 702, 713-714; 909 NW2d 890 (2017) (subject-matter jurisdiction presents a question of law reviewed de novo on appeal).

## III. ISSUE ANALYSIS

### A. ADMIRALTY JURISDICTION

The trial court properly ruled as a matter of law that the facts of the underlying incident would have supported a claim under federal admiralty law because defendants concede that the alleged tort occurred on or in navigable waters, and the trial court correctly determined that the two-part connection test of the United States Supreme Court was satisfied. Therefore, the trial court properly denied defendants' motion for summary disposition by rejecting defendants' argument that as a matter of law admiralty jurisdiction could not be asserted. Similarly, the trial court properly granted plaintiffs' motion in limine to preclude defense experts from testifying contrary to the court's legal ruling that admiralty jurisdiction could not be asserted on the underlying facts. *Winiemko*, 444 Mich at 593. Therefore, we affirm the trial court on this issue.

Federal judicial power extends "to all Cases of admiralty and maritime Jurisdiction," US Const, Art III, § 2, and pursuant to 28 USC 1333(1), federal district courts "have original jurisdiction, exclusive of the courts of the States, of . . . [a]ny civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled." See *Jerome B Grubart, Inc v Great Lakes Dredge & Dock Co*, 513 US 527, 531; 115 S Ct 1043; 130 L Ed 2d 1024 (1995). The "saving to suitors" clause of § 1333(1) renders "state courts competent to adjudicate maritime causes of action in proceedings *in personam*," but "the substantive remedies afforded by the States [must] conform to governing federal maritime standards." *Offshore Logistics, Inc v Tallentire*, 477 US 207, 222-223; 106 S Ct 2485; 91 L Ed 2d 174 (1986). "Where an action is brought in a state court for a maritime tort committed upon navigable waters and within the jurisdiction of admiralty, it is the duty of the state court to recognize and enforce the applicable rules of admiralty." *Sullivan v Pittsburgh SS Co*, 230 Mich 414, 419; 203 NW 126 (1925); see also *Dundee v Puerto Rico Marine Management, Inc*, 147 Mich App 254, 258; 383 NW2d 176 (1985).

The current three-part test for federal admiralty jurisdiction over torts was established in the 1990s by two United States Supreme Court decisions: *Grubart*, 513 US 527, and *Sisson v*

*Ruby,* 497 US 358; 110 S Ct 2892; 111 L Ed 2d 292 (1990). The test was stated in *Grubart,* 513 US at 534, quoting *Sisson,* 497 US at 363-365:

> [A] party seeking to invoke federal admiralty jurisdiction pursuant to 28 U.S.C. § 1333(1) over a tort claim must satisfy conditions both of location and of connection with maritime activity. A court applying the location test must determine whether the tort occurred on navigable water or whether the injury suffered on land was caused by a vessel on navigable water. 48 U.S.C. § 740. The connection test raises two issues. A court, first, must "assess the general features of the type of incident involved," to determine whether the incident has "a potentially disruptive impact on maritime commerce." Second, a court must determine whether the "general character" of the "activity giving rise to the incident" shows "a substantial relationship to traditional maritime activity."

In this case, the trial court ruled that the facts of the underlying case satisfied the location test—"the tort occurred on navigable water"—which previously was the only test necessary for determining admiralty jurisdiction. See *Grubart,* 513 US at 531-532. The trial court reasoned that although defendants' actions related to maintenance of the dock, an actionable tort did not exist until the plaintiffs were injured in the electrified navigable waters. Defendants do not contest this part of the trial court's ruling. Furthermore, the trial court reached the correct result.

Further, in ruling that the location test was satisfied, the trial court properly relied on the Sixth Circuit's opinion in *Chapman v City of Grosse Pointe Farms*, 385 F2d 962 (CA 6, 1967). Michigan courts will follow Sixth Circuit decisions with respect to admiralty law. See *Dundee*, 147 Mich App at 258. In *Chapman*, the plaintiff was injured when diving off a pier into shallow water of Lake St. Clair. *Chapman*, 385 F2d at 963. The federal court held that the location test was satisfied because the plaintiff "suffered no damage or injury of any kind prior to striking the water, at which moment the tort was completed." *Id*. at 965. The *Chapman* Court observed that "the alleged tort here did not occur upon the dock, and this case is therefore governed by the authorities which hold that a tort is deemed to occur at the place where injury is sustained, regardless of the place of origin of the negligent act." *Id*.

The trial court also did not err in finding that the two parts of the connection test were satisfied by the facts of the underlying cases.

### 1. "POTENTIALLY DISRUPTIVE IMPACT ON MARITIME COMMERCE"

The first part of the connection test requires a court to " 'assess the general features of the type of incident involved,' to determine whether the incident has 'a potentially disruptive impact on maritime commerce.' " *Grubart*, 513 US at 534, quoting *Sisson*, 497 US at 363, 364 n 2. The focus of this part of the connection test is on the *general* features and character of the incident, not the *specific facts* of the incident, and on the *potential disruptive effects*, not the *actual disruptive effects*, on maritime commerce. "The jurisdictional inquiry does not turn on the *actual* effects on maritime commerce . . . ; nor does it turn on the particular facts of the incident in this case." *Sisson*, 497 US at 363. "Rather, a court must assess the general features of the type of incident involved to determine whether such an incident is likely to disrupt commercial activity." *Id*. at 364. In *Sisson*, the general features of the incident were "a fire on a [noncommercial]

-8-

vessel docked at a marina on navigable waters" that "plainly satisf[ied] the requirement of potential disruption to commercial maritime activity." *Id*. In fact, the vessel was "a 56-foot pleasure yacht" that "docked at a marina on Lake Michigan, a navigable waterway." *Id*. at 360.

With respect to the potential effect on marine commerce, the *Sisson* Court noted that the Court's prior decisions in *Executive Jet Aviation, Inc v Cleveland*, 409 US 249; 93 S Ct 493; 34 L Ed 2d 454 (1972), and *Foremost Ins Co v Richardson*, 457 US 668; 102 S Ct 2654; 73 L Ed 2d 300 (1982), "lead us to eschew the fact-specific jurisdictional inquiry urged on us by respondents." *Sisson*, 497 US at 364. The Court observed that in *Foremost* it had found that the collision of two small pleasure boats on a river in Louisiana had a potential disruptive effect on maritime commerce. This was based on "the likely effects of a collision at the mouth of the St. Lawrence Seaway, an area heavily traveled by commercial vessels, even though the place where the collision actually had occurred apparently was 'seldom, if ever, used for commercial traffic.'" *Sisson*, 497 US at 363, quoting *Foremost*, 457 US at 670 n 2. This reasoning leads us to reject defendants' fact-specific arguments—the marina was noncommercial and seldom if ever hosted commercial vessels such that the trial court's finding that the general features of the incident had a potential to affect maritime commerce was too remote and could only be achieved through speculation.

Nevertheless, the Court in *Grubart*, 513 US at 538, tempered the connection test by noting that the description of the incident should be "at an intermediate level of possible generality." Thus, the risk to maritime commerce must be "more than a fanciful risk." *Id*. at 539. Defendants argue that the trial court's analysis of the potential impact on maritime commerce based on the general features of the incident violates the *Grubart* Court's statement of disfavor regarding "whimsy."[3] The Court's statement, however, was directed at the second part of the connection test regarding whether the "the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity." *Id.* at 539, 542. At any rate, the trial court's assessment that the general features of the "pretty substantial short" in the electrical service of the marina, when viewed in conjunction with the fact that vessels are docked at the marina, posed a potential hazard to maritime commerce—was neither fanciful nor whimsical.

Defendants argue that no fire actually occurred. But in *Foremost*, the collision of two small pleasure boats on the backwaters of a Louisiana river did not occur on the St. Lawrence Seaway. Hence, the trial court's analysis of the general features in the underlying case—a substantial short in the electrical system of the marina docking system resulting in the electrification of the navigable waters around the marina that had the potential of causing a fire in one of the docked vessels—was not whimsical or speculative without a factual basis. There would be legitimate concern, as indicated by the court, of vessels powered by metal gasoline engines extending into the electrified water catching fire. Consequently, the trial court did not

---

[3] Merriam-Webster's Collegiate Dictionary (8th ed) defines "whimsy" as "1: whim; caprice 2: the quality or state of being whimsical or fanciful . . . 3: a fanciful or fantastic device, object, or creation especially in writing or art."

err by concluding that electrification of marina waters could have resulted in a fire with the potential of at least temporarily preventing the use of the marina by both commercial and noncommercial vessels, thereby possibly disrupting commercial maritime activity. See *Sisson*, 497 US at 363 (holding that "the general features—a fire on a vessel docked at a marina on navigable waters—plainly satisfy[ied] the requirement of potential disruption to commercial maritime activity").

## 2. "SUBSTANTIAL RELATIONSHIP TO TRADITIONAL MARITIME ACTIVITY"

For the second part of the connection test to determine admiralty jurisdiction, "a court must determine whether the 'general character' of the 'activity giving rise to the incident' shows 'a substantial relationship to traditional maritime activity.' " *Grubart*, 513 US at 534, quoting *Sisson*, 497 US at 364-365 n 2. The focus is on the general character of the activity involved rather than the specific facts because the nature of the query is jurisdictional; the determination of the merits of the claims based on specific facts is decided after the jurisdictional question is resolved. *Sisson*, 497 US at 364-365. Thus, "the relevant 'activity' is defined not by the particular circumstances of the incident, but by the general conduct from which the incident arose." *Id*. at 364. A court must "ask whether a tortfeasor's activity, *commercial or noncommercial*, on navigable waters is so closely related to activity traditionally subject to admiralty law that the reasons for applying special admiralty rules would apply in the suit at hand." *Grubart*, 513 US at 539-540 (emphasis added). Consequently, the fact that the marina in this case is primarily for noncommercial use does not compel a conclusion that admiralty jurisdiction is not implicated. For example, no commercial interests were directly involved in *Foremost*, where the Court noted:

> The federal interest in protecting maritime commerce cannot be adequately served if admiralty jurisdiction is restricted to those individuals actually *engaged* in commercial maritime activity. This interest can be fully vindicated only if *all* operators of vessels on navigable waters are subject to uniform rules of conduct. The failure to recognize the breadth of this federal interest ignores the potential effect of noncommercial maritime activity on maritime commerce. [*Foremost*, 457 US at 674-675.]

And, in *Sisson*, where admiralty jurisdiction existed as to an incident involving a fire on a noncommercial vessel at a marina on Lake Michigan, the Court reiterated these comments from *Foremost*. "The fundamental interest giving rise to maritime jurisdiction is 'the protection of maritime commerce,' " but "that interest cannot be fully vindicated unless '*all* operators of vessels on navigable waters are subject to uniform rules of conduct.' " *Sisson*, 497 US at 367, quoting *Foremost*, 457 US at 674-675. "The need for uniform rules of maritime conduct and liability is not limited to navigation, but extends at least to any other activities traditionally undertaken by vessels, commercial or noncommercial." *Sisson*, 497 US at 367.

In this case, the relevant general character of the activity of the alleged tortfeasor, similar to the general character of the activity in *Sisson*, is that of operating a marina and providing docking and related services to vessels on the navigable waters of Lake Michigan. The holding of *Sisson* compels the conclusion that this activity "shows a substantial relationship to traditional maritime activity." *Grubart*, 513 US at 534 (quotation marks omitted). The *Sisson* Court held:

Clearly, the storage and maintenance of a vessel at a marina on navigable waters is substantially related to "traditional maritime activity" given the broad perspective demanded by the second aspect of the test. Docking a vessel at a marina on a navigable waterway is a common, if not indispensable, maritime activity. At such a marina, vessels are stored for an extended period, docked to obtain fuel or supplies, and moved into and out of navigation. Indeed, most maritime voyages begin and end with the docking of the craft at a marina. We therefore conclude that, just as navigation, storing and maintaining a vessel at a marina on a navigable waterway is substantially related to traditional maritime activity. [*Sisson*, 497 US at 367.]

For all the foregoing reasons, the trial court correctly ruled that the underlying facts would have supported a tort claim brought under federal admiralty jurisdiction. Because the underlying municipal defendants could not have asserted governmental immunity to such a claim[4] nor asserted sovereign immunity under the Eleventh Amendment, the trial court also properly denied defendants' motion for summary disposition. We therefore affirm the trial court's August 2, 2016 order denying defendants' motion for summary disposition because the trial court correctly ruled that plaintiffs could have asserted admiralty jurisdiction in the underlying tort action.

## B. LACK OF CAUSATION - *BOYLE V ODETTE*

We conclude that the trial court did not err by denying defendants' motion for summary disposition which had proffered the theory that, as a matter of law, plaintiffs would not be able to satisfy the causation element of their malpractice claim. Defendants argue that plaintiffs' successor counsel could have initiated an admiralty claim by either (1) moving to amend plaintiffs' complaints or (2) filing new complaints. The pertinent time frame within which to analyze the viability of either argument is after plaintiffs discharged defendants as their counsel on November 23, 2015. Defendants continued to owe plaintiffs a duty "to act as an attorney of ordinary learning, judgment, or skill would under the same or similar circumstances," *Mitchell*, 249 Mich App at 677, "until the attorney is relieved of the obligation by the client or the court," *id*. at 683. We agree with the trial court that a motion to amend the underlying pleadings after November 2015, to add a new theory of liability against the municipal defendants would have been denied as being untimely and prejudicial. Further, plaintiffs could not have successfully filed new complaints to assert torts under admiralty jurisdiction because of the doctrine of res judicata and because, absent federally recognized tolling, the three-year federal maritime statute of limitations would have expired. Substantive federal law applies to maritime claims, including the statute of limitations. To promote uniformity, state tolling statutes do not apply, and defendants suggest no pertinent federal tolling provision that might apply to the underlying facts. Consequently, the trial court did not err by denying defendants' *Boyle* motion for summary disposition.

## 1. PERTINENT TIMELINE

---

[4] See n 1, *supra*.

As noted above, the statute of limitations for tort claims under admiralty law is three years. 46 USC 30106. The underlying incident occurred on August 15, 2011; the three-year federal limitations period would have expired on August 15, 2014. Most of the municipal defendants in the underlying action were summarily dismissed by the circuit court on February 11, 2013, on the basis of governmental immunity. This Court, on June 5, 2014, affirmed the circuit court's ruling. On March 3, 2015, the Michigan Supreme Court denied leave to appeal relative to this Court's opinion. Our Supreme Court's order denying leave to appeal was effective on its issuance. MCR 7.315(D). The time to move for reconsideration of the order denying leave to appeal expired on March 24, 2015. MCR 7.311(G). On November 23, 2015, plaintiffs discharged defendants as their lead attorneys with respect to the underlying tort actions. Thus, the pertinent date regarding defendants' summary disposition motion is the date defendants were discharged as plaintiffs' counsel. See *Mitchell*, 249 Mich App at 677, 683.

## 2. MOTION TO AMEND THE PLEADINGS

Except for very early amendments, "a party may amend a pleading only by leave of the court or by written consent of the adverse party" but "[l]eave shall be freely given when justice so requires." MCR 2.118(A)(2). Consequently, obtaining leave of the court to amend a pleading is generally a matter of right rather than of grace. *Kostin Estate*, 278 Mich App at 52, citing *Ben P Fyke & Sons v Gunter Co*, 390 Mich 649, 659; 213 NW2d 134 (1973). Leave to amend may be denied "for particularized reasons such as undue delay, bad faith or dilatory motive, repeated failures to cure by amendments previously allowed, or futility." *Id.*; *Weymers*, 454 Mich at 658.

"Delay, alone, does not warrant denial of a motion to amend." *Weymers*, 454 Mich at 659. But delay coupled with actual prejudice to a party merits denial of a motion to amend pleadings. *Id.* Actual "prejudice" exists when an amendment would prevent the opposing party from receiving a fair trial. *Id.* Because an amended pleading relates back to the date of the original pleading, MCR 2.118(D), the granting of a proposed amendment to a complaint after the statute of limitations has expired will generally be proper. See *Gardner v Stodgel*, 175 Mich App 241, 248-249; 437 NW2d 276 (1989). But an amendment proposed just before trial necessitating adjournment of the trial might justify denial of leave to amend, *Cummings v Detroit*, 151 Mich App 347, 353; 390 NW2d 666 (1986), and a proposed amendment to add a new theory of negligence during the course of trial without advance notice of the theory would justify denying the motion, *Heins v Detroit Osteopathic Corp*, 150 Mich App 641, 645; 389 NW2d 141 (1986).

Our Supreme Court has recognized that "litigation may proceed to a point where the opposing party cannot reasonably be expected to defend against the amendment; this is an *especially pertinent factor* on the eve of, during, or *after trial*." *Fyke*, 390 Mich at 663 (emphasis added). The Court later clarified this point by holding that a trial court "may find prejudice when the moving party seeks to add a new claim or a new theory of recovery on the basis of the same set of facts, after discovery is closed, just before trial, and the opposing party shows that he did not have reasonable notice, from any source, that the moving party would rely on the new claim or theory at trial." *Weymers*, 454 Mich at 659-660. The trial court has discretion to grant or deny a motion to amend a pleading, *id.* at 558, but "a judge abuses this discretion when he utilizes it to obviate a recognized claim or defense," *Fyke*, 390 Mich at 659.

-12-

Applying the principles discussed in *Fyke* and *Weymers* to the facts of this case, the trial court correctly ruled that it would have been an abuse of discretion to grant an amendment to plaintiffs' underlying complaints in November 2015 to assert a new theory of liability under federal admiralty jurisdiction. The underlying incident occurred August 15, 2011, and after discovery and several amendments to the complaints, the municipal defendants were granted summary judgment on February 11, 2013. The judgment was affirmed by this Court and extended to all governmental defendants, and on March 3, 2015, the Michigan Supreme Court denied leave to appeal. "A decision is final when all appeals have been exhausted or when the time available for an appeal has passed." *Leahy v Orion Twp*, 269 Mich App 527, 530; 711 NW2d 438 (2006). As noted, our Supreme Court's order denying leave to appeal was effective when issued, MCR 7.315(D), and the time to move for reconsideration expired on March 24, 2015, MCR 7.311(G). Further, the granting of judgment on a motion for summary disposition "is the procedural equivalent of a trial and is a judgment on the merits which bars relitigation on principles of res judicata." *Capital Mtg Corp v Coopers & Lybrand*, 142 Mich App 531, 536; 369 NW2d 922 (1985). Consequently, when defendants were discharged as plaintiffs' counsel in the underlying case in November 2015, the judgment dismissing the municipal defendants from the case was final and the time for all further appeals had expired. To grant a motion to assert a new theory of liability on the same facts after such a final judgment, even if possible, would constitute an abuse of discretion as it would deny to the municipal defendants the recognized defenses of the statute of limitations and the doctrine of res judicata. See *Weymers*, 454 Mich at 659-660; *Fyke*, 390 Mich at 659, 663; *Capital Mtg Corp*, 142 Mich App at 536.

### 3. RES JUDICATA

A judgment entered after the granting of a motion for summary disposition, unless modified or reversed on direct appeal, is a final judgment capable of barring a second lawsuit if the other requisites of res judicata apply. *Curry v Detroit*, 394 Mich 327, 332; 231 NW2d 57 (1975); *Ferguson v Village of Montrose*, 75 Mich App 596, 598; 255 NW2d 700 (1977). "A decision is final when all appeals have been exhausted or when the time available for an appeal has passed." *Leahy*, 269 Mich App at 530. In this case, the judgment dismissing the municipal defendants in the underlying tort cases became final on March 3, 2015, when the Michigan Supreme Court denied leave to appeal this Court's June 5, 2014 opinion. The time for any further appeal expired on March 24, 2015. MCR 7.311(G).

In Michigan, res judicata bars "not only claims already litigated, but also every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not." *Adair v Michigan*, 470 Mich 105, 121; 680 NW2d 386 (2004). The doctrine bars a subsequent action when "(1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first." *Id*. In addition, the prior action must also have been a final decision. *Richards v Tibaldi*, 272 Mich App 522, 531; 726 NW2d 770 (2006). Clearly, res judicata would apply to bar a new complaint by plaintiffs in November 2015 that asserted a new legal theory against the municipal defendants premised on the same underlying facts. An amended pleading relating back to the original date of the filing of plaintiffs' underlying tort complaints would, however, obviate the element of res judicata requiring that a second or subsequent case be involved. *Adair*, 470 Mich at 121. Allowing an amended complaint after such an extreme delay

would be prejudicial and an abuse of discretion. *Weymers*, 454 Mich at 659-660; *Fyke*, 390 Mich at 659, 663.

## 4. FEDERAL MARITIME STATUTE OF LIMITATIONS

The parties agree that the statute of limitations for maritime tort claims provides that such a claim "must be brought within 3 years after the cause of action arose." 46 USC 30106. Thus, absent tolling, a maritime tort claim based on the August 15, 2011 accident had to be filed by August 15, 2014, well before defendants were discharged as plaintiffs' attorney. Defendants' argument that tolling under MCL 600.5856(a) would apply is misplaced. To promote uniformity, state tolling statutes do not apply to federal admiralty tort claims. See *Burnett v New York Central R Co*, 380 US 424, 433; 85 S Ct 1050; 13 L Ed 2d 941 (1965) ("To allow the limitation provision to incorporate state saving statutes would produce non-uniform periods of limitation in the several States."); *Cunningham v Interlake Steamship Co*, 567 F3d 758, 760 (CA 6, 2009) (holding that "the district court properly refused to apply the Ohio savings statute to toll the statute of limitations" relative to the plaintiff's maritime negligence claims).

The federal statute of limitations for admiralty tort claims is a substantive part of federal admiralty law. *Mink v Genmar Indus, Inc*, 29 F3d 1543, 1547 (CA 11, 1994) (Substantive admiralty law applies to a claim within admiralty jurisdiction, including "the three-year statute of limitations for maritime torts."); *Butler v American Trawler Co*, 887 F2d 20, 21 (CA 1, 1989) (Regardless of whether called substantive or procedural, "Congress intended [the maritime statute of limitations] to preclude the operation of different state limitations statutes in respect to maritime torts."). Consequently, "under federal law, a plaintiff may not begin a personal injury action, based upon a maritime tort, more than 'three years from the date the cause of action accrued.' " *Butler*, 887 F2d at 22. The crux of plaintiffs' malpractice claim is that defendants failed to exercise due diligence to present an admiralty claim, and federal law does not recognize tolling in admiralty cases where the claimant fails to exercise due diligence in preserving his or her legal rights. See *Coleman v Guy F Atkinson Co,* 887 F Supp 49, 53 (D RI, 1995); see also *Valentin v Ocean Ships, Inc*, 38 F Supp 2d 511, 514 (SD TX, 1999).

Regardless whether an admiralty claim is brought in a state or a federal court, substantive federal law applies. The "saving to suitors" clause of 28 USC 1333(1) renders "state courts competent to adjudicate maritime causes of action in proceedings *in personam*," but "the substantive remedies afforded by the States [must] conform to governing federal maritime standards." *Offshore Logistics*, 477 US at 222-223; see also *Mink*, 29 F3d at 1548-1549 (discussing the reverse *Erie* doctrine and holding that when a claim falls within admiralty jurisdiction, "the substantive federal maritime law applies, including the uniform three-year statute of limitations"). Michigan also recognizes that federal admiralty law applies to such claims brought in its courts. "Where an action is brought in a state court for a maritime tort committed upon navigable waters and within the jurisdiction of admiralty, it is the duty of the state court to recognize and enforce the applicable rules of admiralty." *Sullivan*, 230 Mich at 419; see also *Dundee*, 147 Mich App at 258 ("An action in admiralty . . . should be tried under the applicable rules of admiralty even when brought in a state court.").

Based on the foregoing, plaintiffs could not have successfully filed a new admiralty action in either state or federal court after discharging defendants as their counsel because the

-14-

three-year statute of limitations would have expired, and defendants posit no federal principle of equitable tolling that might apply. Thus, the trial court properly denied defendants' motion for summary disposition that had been based on defendants' argument that plaintiffs could not prove causation. New counsel simply could not have initiated an admiralty claim after defendants' discharge.

Finally, defendants' finger-pointing at Robb, who acted as a referring attorney, is irrelevant. Whether Robb's conduct was deficient does not exculpate defendants from their own failure to act if such inaction violated the duty defendants owed to plaintiffs as lead counsel to "act as an attorney of ordinary learning, judgment, or skill would under the same or similar circumstances." *Mitchell*, 249 Mich App at 677. "Rather, the issue is whether defendant[s] [as plaintiffs'] attorneys exercised reasonable skill, care, discretion, and judgment when they determined that plaintiffs' claim was not worth pursuing." *Id.* at 678.

## C. ATTORNEY-JUDGMENT RULE

We hold that the trial court erred by misapplying the attorney-judgment rule, effectively applying a standard of care that is less demanding than the standard actually required of attorneys under the law. Plaintiffs provided evidence from which the trier of fact could conclude that Danzig's research and understanding of the law of admiralty fell below that of "an attorney of ordinary learning, judgment, or skill under the same or similar circumstances." *Simko*, 448 Mich at 650, 656. Consequently, even if Danzig acted in good faith, a jury could still find that he did not "exercise[] reasonable care, skill, and diligence," and that "his acts and omissions," in failing to bring an admiralty claim were not "well founded in law and [were not] in the best interest of his client." *Id.* at 658. Of course, plaintiffs will still need to prove that the alleged negligence was a proximate cause of damages by showing that a negligence claim under admiralty law against one or more of the municipal defendants in the underlying tort action would have ended with a result in plaintiffs' favor. See *Basic Food Indus, Inc v Grant*, 107 Mich App 685, 693; 310 NW2d 26 (1981) (observing that the "suit within a suit" concept applies "where an attorney's negligence prevents the client from bringing a cause of action").

To prove a claim of legal malpractice, a plaintiff must establish: "(1) the existence of an attorney-client relationship; (2) negligence in the legal representation of the plaintiff; (3) that the negligence was a proximate cause of an injury; and (4) the fact and extent of the injury alleged." *Coleman v Gurwin*, 443 Mich 59, 63; 503 NW2d 435 (1993). The element of proximate cause includes both cause-in-fact, i.e., but for the attorney's negligence the plaintiff would not have sustained damages, and proximate or legal cause, i.e., "whether the defendant should be legally responsible for the plaintiff's injury." *Winiemko*, 444 Mich at 586 n 13. The element of causation requires that a plaintiff "must present substantial evidence from which a jury may conclude that more likely than not, but for the defendant's conduct, the plaintiff's injuries would not have occurred." *Skinner v Square D Co*, 445 Mich 153, 164-165; 516 NW2d 475 (1994). Like other torts, a legal malpractice plaintiff may not recover contingent or speculative damages. *Law Offices of Lawrence J Stockler, PC v Rose*, 174 Mich App 14, 33; 436 NW2d 70 (1989). Also, expert testimony is usually required to establish the standard of practice, breach of that standard, and causation. *Id.* at 48.

This Court in *Basic Food Indus*, 107 Mich App at 693, discussed that the "case within a case" or "suit within a suit" framework applies to limited types of legal malpractice claims, such as alleged in this case, where the client's entire claim is lost, e.g., where an attorney fails to take action before the statute of limitations has run or where an attorney's negligence prevents an appeal from being perfected. This analytic framework requires that the plaintiff show not only that the attorney's negligence resulted in a lost opportunity, but also that it is more likely than not that the plaintiff would have been successful asserting the lost opportunity, i.e. would have been able to prove all elements of the lost claim. See *Manzo v Petrella*, 261 Mich App 705, 712; 683 NW2d 699 (2004). Thus, "the suit within a suit requirement serves to insure that the damages complained of due to the attorney's negligence are more than mere speculation." *Basic Food Indus*, 107 Mich App at 693.

In this case, Danzig's deposition established that he considered the possibility of a federal admiralty claim because governmental immunity would not apply but performed limited research on a non-traditional legal research platform and demonstrated lack of knowledge regarding the modern test of admiralty jurisdiction enunciated in United States Supreme Court decisions. Plaintiffs supported their claim of malpractice with proposed testimony by legal experts Linda Atkinson and Amy Neville.

According to interrogatory answers, Atkinson would testify that defendants owed plaintiffs a duty to exercise the reasonable skill, care, discretion, and judgment of competent attorneys practicing in Michigan under similar circumstances and to act in the best interest of the plaintiffs, their clients, in handling the underlying negligence case. Further, Atkinson would indicate that defendants breached this standard of care for attorneys by failing to thoroughly research or learn through consultation the requirements of a claim under federal maritime law, including failure to identify the marina waters (Lake Michigan) as being navigable waters, not recognizing that admiralty did not require injury by or on a boat, and incorrectly determining that admiralty jurisdiction could not exist on the facts of this case. She additionally opined that the inclusion of an admiralty claim would have preserved all of plaintiffs' remedial rights and not closed the door to such a claim. Atkinson was prepared to assert that defendants' negligence cost plaintiffs their action against the municipal defendants, unnecessarily losing it to governmental immunity, where defendants would not have been entitled to governmental immunity under maritime law. Atkinson was also expected to offer testimony that had defendants acted reasonably and brought an admiralty claim, plaintiffs more likely than not would have been successful in the underlying cases.

According to interrogatory answers, Neville was expected to testify that defendants failed to exercise reasonable skill, care, discretion, and judgment in the best interest of their clients in their handling of the underlying electrocution cases. They did so by not competently conducting basic legal research on the issue of the applicability of federal maritime law to the electrocution incident, which ultimately resulted in the dismissal of plaintiffs' claims against the municipal defendants on the basis of governmental immunity. Although Danzig was aware that a maritime claim might be made so as to avoid governmental immunity, research through legal research services such as Westlaw and Lexis would have provided the "necessary foundation upon which a minimally competent lawyer . . . exercise[d] his professional judgment." According to Neville, Yahoo! does not offer services necessary to adequately research specific practice areas such as admiralty law. Furthermore, the research method that Danzig employed was not reasonable, it could

not have provided the foundational information upon which a practicing lawyer could reasonably exercise his professional judgment on the viability of a legal claim or defense, and it fell below the standard of care for a reasonably competent Michigan lawyer. Neville was prepared to testify that Danzig's "research" led him to the incorrect conclusion that a maritime claim could not be brought in the underlying cases because the incident did not involve a "boat" and did not occur on water that was "navigable."

Defendants offered Dennis O'Bryan and Michael A. Schwartz as proposed legal experts. O'Bryan would testify that the underlying facts would not support an admiralty claim because "they do not demonstrate a connection to 'traditional maritime activity,' and the incident did not possess a potentially disruptive impact on maritime commerce." O'Bryan also suggested that if an admiralty claim had been brought, the municipal defendants might still be protected by Michigan's sovereign immunity. Further, O'Bryan noted that an admiralty claim in state court could have been removed to federal court with the loss of the right to a jury trial and consequent diminishment of Fieger's advocacy skills.

According to interrogatory answers, Schwartz would testify that defendants performed a reasonable pre-suit investigation of the underlying facts and conducted legal research regarding admiralty jurisdiction that was reasonable and satisfied the applicable standard of practice. Schwartz also thought that using Yahoo! or any other internet search engine was not inappropriate or unreasonable. Further, even if Danzig used an improper research platform, he reached the correct result regarding lack of admiralty jurisdiction under the existing facts.

To prove its malpractice claim against defendants, plaintiffs must show that defendants were negligent in their handling of plaintiffs' potential legal claims against the municipal defendants in the underlying tort actions. *Coleman*, 443 Mich at 63. This requires proof that defendants breached a duty of care owed to plaintiffs. "Professional malpractice arises from the breach of a duty owed by one rendering professional services to a person who has contracted for those services. A professional malpractice claim is a tort claim predicated on the failure of the defendant to exercise the requisite professional skill." *Broz v Plante & Moran, PLLC*, ___ Mich App ___; ___ NW2d ___ (2018); slip op at 4. There are two components of duty with respect to alleged negligent provision of professional services, as with other claims of negligence. The general standard of care—the obligation the professional owes the client—and the specific standard of care—whether on the particular facts of the case, the professional's conduct satisfied the required general standard of care. See *Moning*, 400 Mich at 438. "While the court decides questions of duty, general standard of care and proximate cause, the jury decides whether there is cause in fact and the specific standard of care: whether defendants' conduct in the particular case is below the general standard of care . . . ." *Id*. See also *Simko*, 448 Mich at 655 ("In negligence actions, the existence of duty is a question of law for the court.").

The duty an attorney owes to his or her client, i.e., the general standard of care, is well established: an attorney retained to represent a client in a legal matter owes a "duty to use and exercise reasonable skill, care, discretion and judgment in the conduct and management thereof." *Coleman*, 443 Mich at 63 n 5; see also *Persinger*, 248 Mich App at 507. But an attorney is not required to "exercise extraordinary diligence, or act beyond the knowledge, skill, and ability ordinarily possessed by members of the legal profession." *Simko*, 448 Mich at 656. Thus, an attorney has a duty to act as would an attorney of ordinary learning, skill, or ability acting under

the same or similar circumstances. *Id*. at 650; *Babbitt v Bumpus*, 73 Mich 331, 337-338; 41 NW 417 (1889).

We conclude that the trial court erred by reading *Simko* as creating a lesser standard of care to measure an attorney's decision not to pursue a legal claim on behalf of a client. Rather, the Court in *Simko* reiterated the well-established general standard of care for attorneys. See *Simko*, 448 Mich at 655-657. The *Simko* case concerned a malpractice claim brought against a criminal defense attorney with respect to representation of the plaintiff in an underlying criminal case that resulted in a conviction and prison sentence that was later reversed on appeal. *Id*. at 650-653. The plaintiff complained about the trial tactics the defense attorney employed in the criminal trial. *Id*.

Analogous to a civil legal malpractice claim, a convicted defendant may raise an issue on appeal that defense counsel did not provide constitutionally effective assistance of counsel. Generally, to show ineffective assistance of counsel, a defendant must establish (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and (2) that there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different. *Strickland v Washington*, 466 US 668, 688, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984); *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). But defense counsel's actions are reviewed differentially because "[t]here are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland*, 466 US at 689. Thus, with respect to matters of trial strategy or tactics, defense attorneys are accorded wide discretion. *People v Heft*, 299 Mich App 69, 83; 829 NW2d 266 (2012). However, this deference vanishes where counsel makes a decision on less than an adequate investigation of the facts or without adequate knowledge of the law. *Strickland*, 466 US at 690-691; *Trakhtenberg*, 493 Mich at 52-53. Thus, defense counsel may exercise discretion within a range of professional judgments, provided that decisions are grounded in adequate knowledge of the facts and the law.

The *Simko* Court applied the well-established general standard of care for attorneys. *Simko*, 448 Mich at 655-657. But the Court also recognized that the alleged errors and omissions in that case involved trial tactics and that a wide range of professional judgments could satisfy the standard of care when based on "reasonable professional judgment" made "in good faith and in honest belief that . . . acts and omissions are well founded in law and are in the best interest of [a] client." *Id*. at 658-659. Consequently, "mere errors in judgment by a lawyer are generally not grounds for a malpractice action where the attorney acts in good faith *and* exercises reasonable care, skill, and diligence." *Id*. at 658 (emphasis added). On the facts before it, the Court held that "the plaintiffs' allegations could not support a breach of duty because they [were] based on mere errors of professional judgment and not breaches of reasonable care." *Id*. at 659. An attorney is not negligent for fashioning a reasonable trial strategy with full knowledge of the law and in good faith. *Id*. at 660-661. Thus, "[w]hen an attorney fashions a trial strategy consistent with the governing principles of law and reasonable professional judgment, the attorney's conduct is legally adequate." *Id*. at 661. Nothing in *Simko* insulates an attorney from a claim of malpractice where the attorney makes a "judgment" to abandon a client's legal claim, which is subsequently lost, on the basis of less than adequate investigation of the law or the facts.

In the present case, defendants do not argue that the decision to forego filing a federal admiralty tort claim against the municipal defendants was strategic or tactical. Rather, defendants assert that the law of admiralty jurisdiction is uncertain or unsettled and does not apply to the facts of this case. On the latter point, the trial court had, at the time of granting summary disposition under the attorney-judgment rule, already decided as a matter of law that admiralty jurisdiction could apply on the facts of this case and that Danzig's determination to the contrary was probably wrong. And, as to the former point, we note that the test for admiralty jurisdiction is neither uncertain nor unsettled. The highest court in the land as of 1995 has clearly articulated a three-part test to determine its existence. See *Grubart*, 513 US at 534; *Ayers v United States*, 277 F3d 821, 824, 828 (CA 6, 2002) (holding that admiralty jurisdiction applied to death of swimmer in navigable waters of the Kentucky River near a lock and dam). While the application of the *Grubart* test to particular facts might be difficult, the test is settled and clear. Further, there is no legal or ethical impediment to bringing a claim that has arguable legal merit. See former MCR 2.114(D)(2)[5] and MCL 600.2591(3)(a)(*iii*);[6] see also MRPC 3.1.[7] Indeed, failing to bring a particular claim when other claims arising from the same incident are being litigated may result in its being barred forever by the statute of limitations or the doctrine of res judicata. Consequently, there is no tactical or strategic benefit in not bringing a claim having arguable legal merit. Instead, there is considerable legal peril in not doing so.

Similarly, *Mitchell v Dougherty*, 249 Mich App 668; 644 NW2d 391 (2002), does not support the trial court's opinion that the attorney-judgment rule protects an attorney from a claim of malpractice even where the attorney's conduct falls below the general standard of care. In *Mitchell*, a malpractice claim was asserted on the basis of the defendant attorney's failure to bring a medical malpractice case against a particular hospital. *Id*. at 672, 677. The *Mitchell* Court applied the well-established standard of care to the facts of that case, *id*. at 677, observing that "the issue is whether defendant attorneys exercised reasonable skill, care, discretion, and

---

[5] Former MCR 2.114(D)(2) provided: "The signature of an attorney or party, whether or not the party is represented by an attorney, constitutes a certification by the signer that . . . to the best of his or her knowledge, information, and belief formed after reasonable inquiry, the document is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law . . . ." MCR 2.114 has been repealed, effective September 1, 2018. Adm File No. 2002-37 (May 30, 2018), 501 Mich cxx, cxxxvii.

[6] The statute defines "frivolous" for the purpose of assessing costs and attorney fees against a nonprevailing party where "[t]he party's legal position was devoid of arguable legal merit."

[7] MRPC 3.1 provides:

> A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous. A lawyer may offer a good-faith argument for an extension, modification, or reversal of existing law. A lawyer for the defendant in a criminal proceeding, or the respondent in a proceeding that could result in incarceration, may so defend the proceeding as to require that every element of the case be established.

judgment when they determined that plaintiffs' claim was not worth pursuing." *Id*. at 678. The plaintiff presented "no evidence the measures that defendant attorneys' took in investigating plaintiffs' claims were less than an attorney of ordinary learning, judgment, or skill would have done under the same or similar circumstances." Further, the defendant attorneys could not locate an expert to provide the affidavit of merit required by law for the medical malpractice claim. *Id*. at 678-679. And, the plaintiff "presented no evidence that defendant attorneys' determination that the case was not worth pursuing was anything other than an honest belief well founded in the law." *Id*. at 679. In contrast, in the instant case, plaintiffs presented evidence that defendants performed inadequate legal research and reached the wrong conclusion regarding the availability of an admiralty claim. Thus, nothing in *Mitchell* insulates defendants from a claim of malpractice that is supported by evidence of less than adequate legal research and investigation to support a "judgment" to not pursue a legal claim that has arguable legal merit, a claim which is then subsequently lost.

In sum, because plaintiffs in this case presented evidence from which the trier of fact could conclude that defendants failed to "exercise[] reasonable skill, care, discretion, and judgment when they determined that plaintiffs' claim was not worth pursuing," *Mitchell*, 249 Mich App at 678, the trial court erred by ruling that the attorney-judgment rule protects an attorney's "judgment" where that attorney's conduct falls below that required by law. Plaintiffs' evidence would permit a trier of fact to conclude that Danzig's research and understanding of the law of admiralty fell below that of "an attorney of ordinary learning, judgment, or skill under the same or similar circumstances." *Simko*, 448 Mich at 650, 656. Therefore, even if Danzig believed he were acting in good faith, a jury could still find that he did not exercise reasonable care, skill, and diligence, and that his failing to bring an admiralty claim was not well founded in law and not in the best interest of his clients. *Id*. at 658. Accordingly, the trial court erred by granting summary disposition in favor of defendants on the basis of the attorney-judgment rule.

### D. THE PARTIES' ANCILLARY CLAIMS

First, plaintiffs argue that the trial court erred by not granting them partial summary disposition as to defendants' negligence. This claim is without merit. As discussed in Part III-C, the evidence before the trial court created a material question fact as to whether defendants, through Danzig, "exercised reasonable skill, care, discretion, and judgment when they determined that plaintiffs' claim was not worth pursuing." *Mitchell*, 249 Mich App at 678.

Second, the trial court did not abuse its discretion by denying plaintiffs' proposed amendments to their complaints. The proposed amendments were not timely, and because the amended allegations either failed to state a claim (Fieger's management style), or depended entirely on the existing allegations of malpractice, they were futile. See *Weymers*, 454 Mich at 658 (amendments should normally be granted but may be denied because of undue delay, bad faith or dilatory motive, repeated failures to cure deficiencies with prior amendments, undue prejudice to the opposing party, and futility); *Kostin Estate*, 278 Mich App at 52 (leave to amend may be denied because of undue delay, dilatory motive, repeated failures to cure deficiencies though prior amendments, or futility).

A proposed amendment is futile where (1) it is legally insufficient on its face, (2) it merely restates allegations already made, or (3) it adds a claim over which the court lacks

jurisdiction. See *PT Today, Inc v Comm'r of Fin & Ins Servs,* 270 Mich App 110, 143; 715 NW2d 398 (2006). In this case, the proposed new allegations directly against Fieger individually either failed to state a recognized claim, or the allegations depended on proving the already asserted claim of malpractice for failing to bring an action based on federal admiralty jurisdiction. In sum, because the proposed amendments failed to state a claim or merely restated aspects of the claim already made, we conclude that the proposed amendments were futile. *Id.* Therefore, the trial court did not abuse its discretion in denying plaintiffs' motion to amend their complaints. *Weymers*, 454 Mich at 654, 658; *Kostin Estate*, 278 Mich App at 51-52.

Finally, defendants claim, citing *Gerling Konzern Allgemeine Versicherungs AG v Lawson*, 472 Mich 44; 693 NW2d 149 (2005), that the trial court erred by dismissing with prejudice defendants' third-party claims for contribution against the Robb defendants. Because defendants have not established that they have or will suffer any prejudice from the trial court's order, we decline to grant defendants any relief.

Defendants have not established that they are aggrieved by the trial court's order because, even if it is wrong, defendants posit only speculative hypothetical situations to suggest a possible future injury. "In order to appeal, a party must be an aggrieved party." *Kieta v Thomas M Cooley Law School*, 290 Mich App 144, 147; 799 NW2d 579 (2010), citing MCR 7.203(A) (The Court of Appeals "has jurisdiction of an appeal of right filed by an aggrieved party . . . ."). To be an aggrieved party, "the litigant must demonstrate that he or she is affected by the decision of the trial court." *Id.* This requirement stems from Const 1963, art 6, § 1, which extends "judicial power" "only to a genuine case or controversy between the parties, one in which there is a real, not a hypothetical, dispute, and one in which the plaintiff has suffered a particularized or personal injury." *Manuel v Gill*, 481 Mich 637, 643; 753 NW2d 48 (2008) (quotation marks and citations omitted). To be "aggrieved," a judgment must cause a party to "suffer[] a concrete and particularized injury." *Id.* at 644. In this case, defendants offer only speculation and a hypothetical future scenario where defendants would settle with plaintiffs before the conclusion of a trial *and* pay plaintiffs more than their pro rata share of common liability from among possible tortfeasors. This unlikely hypothetical situation simply does not qualify as a "concrete and particularized injury," *id.*, to confer aggrieved status on defendants.

In ruling on this issue, the trial court had already expressed its willingness to revisit its order in the unlikely event a settlement were reached short of a verdict after trial that did not determine pro rata liability between defendants and Robb. MCR 2.604(A) provides, in pertinent part, that "an order or other form of decision adjudicating fewer than all the claims, or the rights and liabilities of fewer than all the parties, does not terminate the action as to any of the claims or parties, and the order is subject to revision before entry of final judgment adjudicating all the claims and the rights and liabilities of all the parties."

Moreover, MCL 600.2925a(3)(b)-(c), requires that Robb be given reasonable notice of and "a reasonable opportunity to participate in the settlement negotiations." Any settlement between the parties must also be made in good faith or defendants forfeit any right to contribution. MCL 600.2925a(3)(d). Based on these statutory requirements we find it extremely unlikely that a settlement could be reached without taking into consideration the potential pro rata culpability of Robb and only requiring defendants to pay their agreed pro rata share of liability. Consequently, defendants' hypothetical and speculative injury from the trial court's

order is too remote to conclude that it has caused defendants "a concrete and particularized injury," *Manuel*, 481 Mich at 644, so as to render defendants "aggrieved" for the purpose of appealing the trial court's order, *Kieta*, 290 Mich App at 147; MCR 7.203(A).

Additionally, defendants' reliance on *Gerling Konzern Allgemeine Versicherungs AG v Lawson*, 472 Mich 44, to show a concrete injury is misplaced. In that case, the Court addressed the broader legal issue of whether 1995 tort reform legislation, which replaced joint and several liability in tort actions with several liability, see MCL 600.2956, MCL 600.2957, and MCL 600.6304, preserved the right of a severally liable tortfeasor, such as the plaintiff in that case, to bring an action for contribution. *Lawson*, 472 Mich at 47-49. On this issue, the Court held that "MCL 600.2925a-600.2925d" provides a plaintiff "a statutory right to seek contribution from other responsible tortfeasors after having settled with the injured parties in the underlying tort action, and tort reform legislation in 1995 does not alter this right." *Lawson*, 472 Mich at 62-63.

Furthermore, the *Lawson* case is clearly factually distinguishable from the instant case. Unlike this case, in *Lawson*, one of multiple potential tortfeasors actually settled the plaintiffs' claim with a payment that the settling tortfeasor alleged was "more than his pro rata share of the common liability." MCL 600.2925a(2); *Lawson*, 472 Mich at 47, 53. Additionally, the settling tortfeasor complied with the statutory requirements of notice to the non-settling tortfeasor and an opportunity to participate in negotiations that ended in a good faith. *Lawson*, 472 Mich at 54. In this case, there has been no good faith settlement of plaintiffs' claims by defendants' paying more than their pro rata share after notice, and no opportunity to participate in negotiations has been provided to Robb. Moreover, should those facts develop in the future, there is no showing that the trial court would not revisit its order to permit defendants to seek contribution from Robb by filing an action for contribution. Consequently, defendants' claim for relief is not yet ripe for review.

## IV. CONCLUSION

For the reasons discussed in this opinion, we affirm the trial court's rulings that a tort claim could be asserted under federal admiralty jurisdiction as to the underlying incident. Further, we affirm the trial court's denial of defendants' motion for summary disposition under *Boyle v Odette* asserting that plaintiffs would be unable to prove that defendants' alleged malpractice was a cause of any damages.

Regarding the parties' ancillary claims, we find no error occurred when the trial court did not grant plaintiffs' motion for partial summary disposition. Additionally, the trial court did not abuse its discretion by ruling that plaintiffs' proposed amendments to their complaints were untimely and futile.

With respect to defendants' argument regarding the dismissal with prejudice of defendants' claim for contribution from Robb, we find defendants do not allege a concrete and particularized injury. The scenario advanced by defendants regarding prejudice is so remote and unlikely to result in an actual injury to defendants that it does not warrant relief.

Finally, the trial court erred by applying a standard of care pursuant to the attorney-judgment rule that is below that required by law. Plaintiffs provided evidence from which the

trier of fact could conclude that defendants, through Danzig, performed inadequate research and lacked adequate understanding of the law of admiralty, such that he failed to act as "an attorney of ordinary learning, judgment, or skill under the same or similar circumstances." *Simko*, 448 Mich at 650, 656. We therefore reverse the grant of summary disposition to defendants and remand for further proceedings in the trial court.

We reverse in part, affirm in part, and remand for further proceedings consistent with this opinion. We do not retain jurisdiction. Because no party has prevailed in full, we decline to award taxable costs under MCR 7.219(F).

/s/ Jane E. Markey
/s/ Michael J. Kelly
/s/ Brock A. Swartzle