*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

---

SYLVIA BETHEA, CARL F. SCHIER, GHASSAN ALKAMANO, and JENNIFER ALKAMANO,

       Plaintiffs-Appellants,

v

SITARAM KAURA and MONICA KAURA,

       Defendants,

and

P & L BUILDING COMPANY LLC, GEORGE VULAJ, and PALJOKA VULAJ,

       Defendants-Appellees.

UNPUBLISHED
March 23, 2023

No. 359045
Oakland Circuit Court
LC No. 2019-171379-CH

---

Before: MURRAY, P.J., and RIORDAN and YATES, JJ.

PER CURIAM.

Plaintiffs appeal by leave granted[1] the circuit court's order denying their motion for a new trial. On appeal, plaintiffs argue that the circuit court's orders disposing of this case are invalid because the circuit court lacked subject-matter jurisdiction, and one of the claims was not ripe. Plaintiffs also argue that the circuit court violated their procedural due-process rights by not allowing them to present non-party witnesses or any exhibits at the bench trial as a sanction for failure to comply with the scheduling order. We disagree and affirm.

## I. FACTS

---

[1] Although plaintiffs filed a claim of appeal, it was untimely. See MCR 7.204(A)(1)(d). However, we will treat the claim of appeal as an application for leave to appeal and grant it. See *Stumbo v Roe*, 332 Mich App 479, 482 n 1; 957 NW2d 830 (2020).

On January 25, 2019, plaintiffs Sylvia Bethea, Carl F. Schier, Ghassan Alkamano, and Jennifer Alkamano filed their complaint in circuit court against defendants Sitaram Kaura, Monica Kaura, P & L Building Company LLC, George Vulaj, and Palijoka Vulaj, alleging as follows. Plaintiffs Sylvia Bethea and Carl F. Schier, as husband and wife, own a residential lot at 6080 Old Orchard Drive in Bloomfield Township, and plaintiffs Ghassan Alkamano and Jennifer Alkamano, as husband and wife, own an adjacent residential lot at 6100 Old Orchard Drive. In 2015, defendants George Vulaj and Palijoka Vulaj, as principals of defendant P & L Building Company LLC (hereinafter "the Vulaj defendants"), assumed possession of the nearby residential lot at 6089 Old Orchard Drive, demolished the existing house on that lot, and constructed a new house. The newly constructed house was significantly larger than the previous house on that lot, and as a result, the pre-existing drainage pattern in the area—both natural and man-made—was altered. Excessive water consequently flowed to plaintiffs' respective lots. The Vulaj defendants agreed to construct an adequate replacement drain, which was completed by October 2016. At about that time, the Vulaj defendants sold the residential lot at 6089 Old Orchard Drive to defendants Sitaram Kaura and Monica Kaura (hereinafter "the Kaura defendants"). Apparently, the replacement drain was insufficient. The equitable and monetary claims in the complaint essentially sought to restore the status quo before the drainage pattern was altered, as well as damages for the excessive water on plaintiffs' respective properties. The complaint requested "damages in that amount in excess of $25,000.00 to which they are found to be entitled."

On April 9, 2019, the circuit court issued a "pretrial order" providing that the parties were required to file a jointly prepared "final pretrial order" one week before the scheduled trial date listing, in relevant part, the name of every prospective witness and every exhibit to be introduced. The pretrial order stated that "[o]nly those witnesses who are listed will be permitted to testify at the trial," and "[e]xcept for a demonstration of good cause, only those exhibits which have been listed in the Final Pretrial Order may be offered into evidence at the trial." The pretrial order further stated that "failure to comply strictly with all of its terms may result in dismissal, default judgment, refusal to let witnesses testify, refusal to admit exhibits, or other action . . . ." (Emphasis omitted.)[2]

In August 2019, the parties filed a stipulated order, which the circuit court signed, exempting the case from case evaluation because "[t]he suit involves a request for injunctive relief to remediate a storm drain and to dedicate a permanent drainage easement," "[c]onstruction of the drain . . . is nearly complete," and under MCR 2.403(A)(3), "claims seeking equitable relief" may be exempted from case evaluation.[3]

---

[2] The day before, the circuit court issued a similarly worded "scheduling order" providing that "each party shall submit its witness list and a list of proposed exhibits to opposing counsel and the Court by 07/26/2019." (Emphasis omitted.)

[3] The remediated drain was eventually completed during these proceedings. In April 2021, the circuit court entered a stipulated order essentially providing that the Kaura defendants were dismissed from the case, and plaintiffs' equitable claims against the Vulaj defendants were dismissed from the case as well.

Trial was repeatedly adjourned for an extended period of time due to delays in the drain remediation, as well as scheduling issues related to the COVID-19 pandemic. Eventually, in March 2021, the Vulaj defendants moved for involuntary dismissal under MCR 2.504(B)(1). In the motion, the Vulaj defendants explained that the April 2019 scheduling order required the parties to submit witness and exhibit lists by July 26, 2019, but that plaintiffs "have still not filed either a witness list or exhibit list, and neither side has conducted any discovery of any kind." The Vulaj defendants argued that dismissal was warranted because plaintiffs failed to comply with the scheduling order, and as a result, "they are unable to call any witnesses or provide any evidentiary support for their alleged claims."[4]

Also in March 2021, plaintiffs moved to file an amended complaint. The relevant difference between the original complaint and the proposed amended complaint is that the latter added an express claim for monetary damages on behalf of plaintiffs Ghassan Alkamano and Jennifer Alkamano (hereinafter "the Alkamano plaintiffs"). This monetary claim was based upon the allegation that the Alkamano plaintiffs initially planned to construct a new residence in 2018 or 2019, but as a result of the drainage issues and the Vulaj defendants' "inordinate delay" in completing the remediated drain, the cost of that new residence had dramatically increased in light of recent inflation.

At a March 17, 2021 motion hearing, the circuit court denied both motions. With regard to the motion for involuntary dismissal, the circuit court explained that plaintiffs did not have "any history here of refusal to comply with court orders," so it would not dismiss the case but would instead only allow the parties themselves to testify. The circuit court added that no exhibits could be introduced because no party submitted an exhibit list. With regard to the motion to file an amended complaint, the circuit court explained that the bench trial was scheduled to be conducted in only a few weeks, the COVID-19 pandemic had been "happening now for quite a while," the additional monetary claim was "speculative," and there would be prejudice to the Vulaj defendants if the claim was added at that stage of the proceedings.

The bench trial was ultimately held on May 24, 2021. Plaintiff Schier testified about the factual history of the case, including the fact that flooding occurred on his residential lot in 2018, which required him to hire an engineering firm. At the conclusion of his testimony, plaintiff Schier requested the following damages:

> As a result of the agreement to timely remediate the drain, the Plaintiffs have suffered damages. Engineering fees, $4,036. Attorney fees paid to a title examiner, $750. Prices for construction and framing and the lumber used in the home building have increased from just over $400 per thousand board feet to $1,400 per thousand board feet.

The Vulaj defendants objected to the final request for damages, arguing that plaintiff Schier had no personal knowledge of lumber prices, that plaintiffs' motion to amend the complaint was

---

[4] In their response brief, plaintiffs argued, "Plaintiffs did not violate the scheduling order. They treated it as inapplicable given defendant's [sic] proposal and promise, acted upon, to restore the drain."

denied, that the request was based on "speculation and conjecture" because building prices may change over time, and that the Alkamano plaintiffs "have not started construction" and "may never start construction." The circuit court agreed with the Vulaj defendants, reasoning that it could not take judicial notice of lumber prices.

Plaintiff Ghassan Alkamano testified that he hired an architect in July 2017 to design a house for the residential lot that he owned, but he could not begin construction in 2018 as intended because there was water accumulation on his lot. He tried to testify about the additional costs that he would incur if he started construction on his house at the time of trial, but the circuit court ruled that such testimony was inadmissible hearsay.

Plaintiffs rested their case after these two witnesses. The Vulaj defendants moved for involuntary dismissal, arguing that plaintiffs did not prove that they caused the flooding issues on plaintiffs' respective properties in 2018. The circuit court took the matter under advisement.

On July 20, 2021, the circuit court issued its written opinion and order granting the Vulaj defendants' motion for involuntary dismissal. The circuit court explained that because the equitable claims had already been resolved, the only two remaining claims involved monetary damages for trespass and monetary damages for promissory estoppel. The circuit court found that plaintiffs did not prove that the Vulaj defendants caused the flooding to plaintiffs' respective properties in 2018, so the trespass claim failed. The circuit court also found that the promissory-estoppel claim failed because, while the Vulaj defendants promised to remedy the drainage issues, "the parties did not agree to have it completed by a certain time." Thus, the circuit court dismissed plaintiffs' remaining claims under MCR 2.504(B)(2).

## II. JURISDICTION

Plaintiffs argue that the circuit court lacked jurisdiction over this case, so its orders disposing of the case are invalid. Specifically, plaintiffs argue that the monetary claim of the Alkamano plaintiffs was not ripe and that the remaining monetary claims, those of plaintiffs Schier and Bethea, were less than the $25,000 jurisdictional threshold of the circuit court. Taken together, according to plaintiffs, once the trial court dismissed plaintiffs' equitable claims in April 2021, the circuit court lacked jurisdiction over the entire case, which consisted exclusively of the monetary claims of plaintiffs Schier and Bethea at that point. We disagree.[5]

---

[5] To the extent that plaintiffs argue that the monetary claim of the Alkamano plaintiffs was not ripe, we note that the circuit court denied plaintiffs' motion to amend their complaint to add this claim. Thus, the monetary claim of the Alkamano plaintiffs simply was not before the circuit court for resolution, regardless of whether it hypothetically was ripe or not. In other words, there was no "adjudication" of a claim that would implicate the question of ripeness. See *King v Mich State Police Dep't*, 303 Mich App 162, 188; 841 NW2d 914 (2013). "When an appellant fails to dispute the basis of a lower court's ruling, we need not even consider granting the relief being sought by the appellant." *Denhof v Challa*, 311 Mich App 499, 521; 876 NW2d 266 (2015). See also *Joerger v Gordon Food Serv, Inc*, 224 Mich App 167, 175; 568 NW2d 365 (1997) ("We initially note that

-4-

"Challenges to subject-matter jurisdiction cannot be waived, and a court must entertain such challenges regardless of when they are raised, or even raise such challenges sua sponte." *Boler v Governor*, 324 Mich App 614, 619; 923 NW2d 287 (2018) (quotation marks and citation omitted). This Court reviews de novo questions of subject-matter jurisdiction. *Petersen Fin LLC v City of Kentwood*, 326 Mich App 433, 441; 928 NW2d 245 (2018).

"Circuit courts have original jurisdiction to hear and determine all civil claims and remedies, except where exclusive jurisdiction is given in the constitution or by statute to some other court or where the circuit courts are denied jurisdiction by the constitution or statutes of this state." MCL 600.605. "The district court has exclusive jurisdiction in civil actions when the amount in controversy does not exceed $25,000.00." MCL 600.8301(1). "The district court shall not have jurisdiction in actions for injunctions, divorce or actions which are historically equitable in nature, except as otherwise provided by law." MCL 600.8315.

In Michigan, "the long-established rule [is] that the pleadings determine the amount in controversy for purposes of the court's subject-matter jurisdiction." *Hodge v State Farm Mut Auto Ins Co*, 499 Mich 211, 219; 884 NW2d 238 (2016). "However, . . . the amount in controversy alleged in a plaintiff's pleading does not govern a court's subject-matter jurisdiction if the amount in controversy alleged is unjustifiable and could not be proved." *Krolczyk v Hyundai Motor Am*, 507 Mich 966, 966 (2021) (cleaned up). "Michigan courts have long recognized that circumstances might change during a lawsuit, and the amount-in-controversy calculation is simply one made, based on the pleadings, for purposes of subject-matter jurisdiction." *ABCS Troy, LLC v Loancraft, LLC*, 337 Mich App 125, 134; 972 NW2d 317 (2021).

Similarly, in the federal system, a decline in the amount in controversy below the jurisdictional threshold, or change in other jurisdictional facts, after the complaint is filed does not oust the federal court of subject-matter jurisdiction. See *Porsche Cars N Am, Inc v Porsche.net*, 302 F3d 248, 255-256 (CA 4, 2002) ("[I]t is black-letter law that the conditions that create diversity jurisdiction, one well-known basis for subject-matter jurisdiction, need *not* survive through the life of the litigation. Rather, a court determines the existence of diversity jurisdiction at the time the action is filed, regardless of later changes in originally crucial facts such as the parties' citizenship or the amount in controversy.") (quotation marks and citation omitted).

In this case, the January 2019 complaint, which initiated this case, requested damages exceeding $25,000. That request was not frivolous in light of the allegations contained therein,

---

for most of the arguments presented in this issue plaintiffs failed to address the basis of the trial court's decision. This Court, therefore, need not even consider granting plaintiffs the relief they seek.").

We acknowledge, however, that the circuit court's rationale for denying plaintiffs' motion to amend their complaint, as well as the Vulaj defendants' arguments in that regard, implied that the facts were not yet sufficiently developed to warrant plenary consideration of the claim at issue. Such rationale is consistent with plaintiffs' position on appeal that the claim of the Alkamano plaintiff was not ripe. See *Duncan v Mich*, 284 Mich App 246, 292; 774 NW2d 89 (2009).

which indicated that a drain had to be remediated to divert water from multiple nearby properties. In other words, the request for damages was justifiable. Because the request for damages exceeded the jurisdictional threshold of the circuit court, see MCL 600.605, MCL 600.8301(1), and was justifiable from the allegations in the complaint, see *Krolczyk*, 507 Mich at 966, the circuit court had subject-matter jurisdiction over this case. Subsequent events did not divest the circuit court of that jurisdiction. See *ABCS Troy*, 337 Mich App at 134.[6]

## III. PROCEDURAL DUE PROCESS

Plaintiffs argue that the circuit court violated their procedural due-process rights by not allowing the parties to present non-party witnesses or exhibits. We disagree.

We first note that this issue arguably is waived because it was not raised in the circuit court. See *People v Metamora Water Serv, Inc*, 276 Mich App 376, 382-383; 741 NW2d 61 (2007). "However, when the lower court record contains all the facts necessary to resolve an issue, the appellate court may nonetheless decide an issue not decided by the trial court." *Id*. at 382. This Court reviews de novo whether a party was afforded procedural due process. *In re Sanborn*, 337 Mich App 252, 268; 976 NW2d 44 (2021).

"[D]ue process of law requires that deprivation of life, liberty, or property by adjudication must be preceded by notice and an opportunity to be heard." *Bonner v City of Brighton*, 495 Mich 209, 235; 848NW2d 380 (2014). "To comport with these procedural safeguards, the opportunity to be heard must be granted at a meaningful time and in a meaningful manner." *Id*. (quotation marks and citation omitted). Courts generally consider the following three factors to determine whether procedural due process is satisfied:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. [*Mathews v Eldridge*, 424 US 319, 325; 96 S Ct 893; 47 L Ed 2d 18 (1976).]

---

[6] The circuit court may be divested of jurisdiction by statute, but "[t]he divestiture of jurisdiction from the circuit court is an extreme undertaking." *Wikman v City of Novi*, 413 Mich 617, 645; 322 NW2d 103 (1982). Thus, courts "presume that a circuit court continues to have subject-matter jurisdiction unless divestiture is required by the clear mandate of the law." *People v Washington*, 508 Mich 107, 137; 972 NW2d 767 (2021) (VIVIANO, J., *dissenting*) (cleaned up). We cannot identify any statute divesting the circuit court of jurisdiction and requiring that court to transfer a case to district court if the amount in controversy changes or equitable claims are extinguished after a complaint is filed. Incidentally, however, MCR 2.227 allows such a transfer to occur, but only if the parties stipulate to an amount in controversy that is not greater than the jurisdictional limit of the district court. See MCR 2.227(B)(1)(a).

Under MCR 2.401(B)(2), a circuit court may enter a "scheduling order" that includes "the exchange of witness lists" and other such matters. The circuit court has the discretion to refuse to permit a witness to testify "after a party has failed to comply with a deadline for submission of a witness list." *Carmack v Macomb Co Comm'y College*, 199 Mich App 544, 546; 502 NW2d 746 (1993). However, "legitimate reasons may exist permitting parties to testify at trial even if no witness list has been filed." *Grubor Enterprises, Inc v Kortidis*, 201 Mich App 625, 628; 506 NW2d 614 (1993). Further, this Court has recognized that a case may be dismissed if a party fails "to file witness and exhibit lists," but generally only if there is "a history of recalcitrance or deliberate noncompliance with discovery orders, which typically precedes the imposition of such a harsh sanction." *Thorne v Bell*, 206 Mich App 625, 633-634; 522 NW2d 711 (1994).

In this case, the circuit court entered a scheduling order providing that "each party shall submit its witness list and a list of proposed exhibits to opposing counsel and the Court by 07/26/2019." (Emphasis omitted.) Plaintiffs never submitted a witness list or list of proposed exhibits at any stage of the proceedings. In fact, plaintiffs acknowledged that they did not comply with the scheduling order in a March 2021 brief filed in the circuit court, stating therein that "Plaintiffs did not violate the scheduling order. They treated it as inapplicable given defendant's [sic] proposal and promise, acted upon, to restore the drain." Given this noncompliance with the scheduling order, the circuit court had the discretion to impose sanctions on plaintiffs, up to and including dismissal. See *Thorne*, 206 Mich App at 633-634.

The question then becomes whether the circuit court's decision to not allow non-party witnesses to testify and to exclude all exhibits violated procedural due process. By analogy, this Court has held that it does not violate procedural due process to dismiss a case for repeated failure to comply with discovery orders. See *Enci v Jackson*, 173 Mich App 30, 34-36; 433 NW2d 313 (1988). Other states are in accord. See, e.g., *Iaconis v Ward*, 989 So2d 687, 688 (Fla Dist Ct App, 2008); *Johnson v Whitney Sand & Gravel, Inc*, 828 SW2d 801, 805 (Tex Ct App, 1992). It follows that it does not violate procedural due process to impose a lesser sanction for a lesser violation of discovery orders. That is what occurred here—as the circuit court observed, plaintiffs did not have a history of noncompliance with court orders, but they did not file any witness list or exhibit list despite the fact that the case had been ongoing for over two years.

We conclude that plaintiffs' procedural due-process rights were not violated. They initially were given "an opportunity to be heard" through witnesses and exhibits, see *Bonner*, 495 Mich at 235, but they failed to avail themselves of that opportunity by submitting witness and exhibit lists as required by the scheduling order. Moreover, the circuit court did not dismiss the entire case. Instead, it allowed plaintiffs to testify themselves about the facts. Its decision balanced plaintiffs' need for a trial on the merits with the fact that the case had been ongoing for over two years and eventually had to reach a conclusion. In other words, the circuit court balanced plaintiffs' rights to a fair hearing with the Vulaj defendants' similar rights to a fair hearing, as well as the court's own right to control its docket. Such a balancing test is at the heart of a procedural due-process analysis. See *Mathews*, 424 US at 325. Given the long delays in this case, the circuit court's decision was reasonable and did not violate procedural due process.

## IV. CONCLUSION

The circuit court had subject-matter jurisdiction over this case, and it did not violate plaintiffs' procedural due-process rights by the manner in which it conducted the bench trial. Therefore, we affirm.

/s/ Christopher M. Murray
/s/ Michael J. Riordan
/s/ Christopher P. Yates